THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DELIZON BUSH, Defendant-Appellant.

(No. 55012;

First District—March 22, 1972.

Michael P. Toomin, of Chicago, for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Stephen R. Kramer, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

Delizon Bush, the defendant-appellant, was charged with public indecency [1] and with resisting arrest.[2] After a jury trial, he was acquitted of public indecency but convicted of resisting arrest. In this appeal he presents three issues. Without any suggestion concerning the merits of the other two, we decide only the issue whether the evidence proved beyond a reasonable doubt that defendant knowingly resisted the performance of an authorized act by one known to him to be a peace officer.

At about 4:00 P.M. on August 29, 1969, Bush, a man 63-years old who

---

[1] Ill. Rev. Stat. 1969, ch. 38, par. 11-9.

"§ 11-9.   Public Indecency

(a) Any person of the age of 17 years and upwards who performs any of the following acts in a public place commits a public indecency:

(1) An act of sexual intercourse; or

(2) An act of deviate sexual conduct; or

(3) A lewd exposure of the body done with intent to arouse or to satisfy the sexual desire of the person; or

(4) A lewd fondling or caress of the body of another person of either sex.

(b) "Public place" for purposes of this Section means any place where the conduct may reasonably be expected to be viewed by others.

A person convicted of public indecency shall be fined not more than $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both."

[2] Ill. Rev. Stat. 1969, ch. 38, par. 31-1

"§ 31-1.   Resisting or Obstructing a Peace Officer

A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his official capacity shall be fined not to exceed $500 or imprisoned in a penal institution other than the penitentiary not to exceed one year, or both."

weighed 145 pounds, was on his way home from work. At Stockton Drive in Lincoln Park, he went into a men's washroom. Chicago policeman John Manley, a younger man who weighed 180 pounds, either was in there or walked in a short time later. He was casually dressed, in sport shirt and slacks. Outside the men's washroom was policewoman Frances Rommelfanger, who also was casually dressed. Manley, one of two prosecution witnesses, testified that when he entered the washroom, defendant was in there using a urinal. Then defendant turned, faced Manley and committed an act of public indecency. According to Manley, there followed a two, two and one-half, or three minute conversation in which defendant "[s]aid 'How are you' and I said 'Fine.' He said 'it is nice weather out here isn't it?' and I said something to affect [sic] that it was rather warm out. And then he said something else, and I said something back—I don't recall what [sic]." Manley then said that "I took my star from my pocket and held it up in my left hand and I said 'I am a police officer and you are under arrest'." Defendant, according to Manley, "[l]et out a cry of 'O no.' He then caught me by surprise. He pushed past my arm and pushed pass [sic] me, I fell down and I grabbed onto him * . * *."

As one of five defense witnesses, defendant testified that when he walked into the washroom, Manley and a man named Terrelli were already in there. Defendant did not know either Terrelli or Manley. Manley, defendant told the jury, began "[w]alking up and back behind me. After that * * * [he] comes up beside of me and pulled out what, his wallet from the left hand and flashed it and said he was a policeman * * *. I backed up and started to zip my pants and he grabbed me around the throat and pulled me outside and I started screaming [sic]." Defendant testified that when Manley stated he was a policeman, "I said 'I don't believe you.' He grabbed me around the neck and he threw me on the ground * * *. He pounded me on the eyes and stomped on me * * *." Policewoman Rommelfanger, the other prosecution witness, testified that she heard shouting coming from the washroom. She ran to the door, and found defendant and Manley struggling. Although denying that he "stomped" on defendant, Manley admitted that he hit him "[o]utside the washroom just prior to his being subdued and handcuffed, I had to strike him." Manley said that because he had a nose bleed, defendant was taken to the Henrotin Hospital emergency room. Dr. Homer C. Groves, however, testified that an examination disclosed defendant had two black eyes, multiple fractures of the right chest wall consisting of four broken ribs and fracture of the nose. Dr. Groves told the jury that defendant remained hospitalized for two days. Two character witnesses testified that in his community,

defendant had a good reputation as a peaceable and law-abiding citizen.

In deciding whether this evidence proved defendant guilty beyond a reasonable doubt, we notice there is no denial that at the time in question Officer Manley said he was a police officer. What defendant denies is the accusation that when Manley announced, "I am a policeman," he pushed him and knocked him down. Defendant's version was that because of Manley's youthful appearance, his casual attire (sport shirt and slacks), he did not believe Manley was a policeman and told him so. No other person witnessed the occurrence. Policewoman Rommelfanger, the other prosecution witness, could only testify concerning shouting she heard coming from the washroom, an event which followed what was differently described by defendant and Manley.

■■ Plainly, if defendant (from what he was told) knew that Manley was a policeman yet pushed him and knocked him down, he committed the offense of resisting a police officer. (See *People v. Kent*, 110 Ill.App.2d 400, 249 N.E.2d 698.) On the other hand, if defendant (from the circumstances he described) did not know Manley was a police officer, and he only "[b]acked up and started to zip my pants and he grabbed me around the throat and pulled me outside and I started to scream," then he did not knowingly resist a peace officer. (Compare *People v. Royer*, 101 Ill.App.2d 44, 242 N.E.2d 288.) The jury's verdict, however, manifests acceptance of Manley's testimony as true. Therefore, defendant's conviction rests on the testimony of one witness, that of Officer Manley.

■■ Our law recognizes the rule that the testimony of one witness alone, when it is positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. (*People v. Miller*, 30 Ill.2d 110, 113, 195 N.E.2d 694; *People v. Jennings*, 84 Ill.App.2d 33, 39, 228 N.E.2d 566.) It was the function of the jury to determine whether Officer Manley's testimony alone, concerning defendant's conduct, was entitled to belief. It is the function of this court to review all of the evidence, including Officer Manley's testimony, and determine whether defendant was proven guilty of the crime charged beyond a reasonable doubt. Where our review of the record leaves us with a grave and substantial doubt of defendant's guilt, it is our duty to reverse his conviction. *People v. Willson*, 401 Ill. 68, 73, 81 N.E.2d 485; see *People v. Butler*, 28 Ill.2d 88, 190 N.E.2d 800; *People v. Gibbs*, 119 Ill.App.2d 222, 225 N.E.2d 486.

In his direct examination Officer Manley testified that when he entered the men's washroom in Lincoln Park, the defendant was there. Manley denied knowing the name of any other person in that public place. Defendant's testimony was different: he said that when he entered the washroom Officer Manley and a man named Terrelli were there. When

cross-examined, Manley was shown a report he and policewoman Rommelfanger prepared and signed. The report stated that it was a man known to Manley as Terrelli who was in the washoom when Manley entered. He then admitted that Terrelli was the person present in the washroom when he entered and that defendant entered later. Thus, the report contradicted Manley's sworn testimony and corroborated defendant's.

On another point, Manley said that prior to his telling the defendant he was a police officer, there was a pleasant conversation between them. Then, without explaining how a 63-year old man weighing 145 pounds could knock down a young, 180 pound policeman, Manley told the jury that defendant pushed him and he fell to the floor. Although asked and indeed pressed during cross-examination, Manley never explained why he inflicted on defendant the injuries which were discovered at the Henrotin Hospital. He only said that he took defendant to Henrotin because he was bleeding from the nose. However, after Dr. Homer C. Groves had described the injuries he found on defendant: two black eyes, multiple fractures of the right chest wall consisting of four broken ribs and fracture of the nose, Manley, called on rebuttal, testified that "I did hit him hard" because he said defendant was trying to escape. When he answered questions on direct, Manley had explained that two unidentified police officers came to the scene of the arrest but "[t]hey stood by for a couple of moments while I handcuffed the defendant's hands behind his back with their assistance  *  *  *." In judging the sufficiency of this testimony as evidence, we bear in mind that, on the crucial point of the State's case, Manley was more than the only witness; he was the accuser whose testimony concerning his reason for arresting the defendant was rejected by the jury.

■■ For these reasons, we are compelled to conclude that the evidence in the record, including the testimony of policewoman Rommelfanger, did not prove beyond a reasonable doubt that defendant knowingly resisted the performance of an authorized act by Officer Manley, known to him to be a peace officer. The incident which gave rise to defendant's arrest occurred in a men's public washroom. Manley, a young man, was casually dressed. The surroundings were such that a 63-year old citizen could reasonably have questioned that Manley was a police officer. Moreover, Dr. Groves, a disinterested witness, testified that defendant "[t]old me that when the man attempted to arrest him he became alarmed because he didn't know who he was." In addition to this corroborating evidence, two character witnesses told the jury that in the community where he had lived for 18 years, defendant had a good reputation as a peaceable and law-abiding citizen. Although evidence

of good character proves neither guilt nor innocence, in a particular case it cannot be disregarded and may be sufficient to raise a reasonable doubt of a defendant's guilt. *People v. Eatman,* 405 Ill. 491, 499, 91 N.E. 387.

Therefore, on evidence which also discloses that defendant was arrested and charged with a crime the jury found he did not commit; that he was beaten to a point that required two days of hospitalization, affirmance of this conviction would cap indignity with injustice. The judgment is reversed.

Judgment reversed.

STAMOS, P. J., and SCHWARTZ, J., concur.