THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT SCOTT, Defendant-Appellant.

(No. 55885;

First District—June 13, 1972.

Gerald W. Getty, Public Defender, of Chicago, (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Albert H. Rosendahl, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE BURKE delivered the opinion of the court:

An indictment charged Robert Scott with two counts of aggravated battery and one count of attempt murder. After a bench trial he was found guilty as charged and sentenced to not less than five nor more than ten years in the penitentiary.

In prosecuting this appeal, defendant contends that the trial judge failed to apply the rule of law which authorizes the use of arms for the purpose of self-defense, that he was not proved guilty beyond a reasonable doubt, that the trial judge did not adequately advise him of his right to a trial by jury and that the sentence is excessive. The following pertinent facts appear from the record.

At about 9:00 P.M. on August 22, 1969, Louis Garcia was selling ice cream from a truck in the 1600 block of West Superior Street, Chicago. While Garcia was serving a number of children, the defendant instructed Garcia to give the waiting children anything they wanted, stating that he would pay. After complying with the defendant's request, Garcia told the defendant that the bill amounted to $6.25. The defendant refused to pay and walked away from the truck. Garcia ran after the defendant and asked him to return, offering to refigure the bill. The defendant refused.

Six occurrence witnesses testified at the trial. According to Garcia, as he and the defendant were standing in front of a gangway the de-

fendant mumbled something and started shooting. Garcia testified that he was shot four or five times including one shot in his back. This witness stated that prior to being shot, he did not strike or otherwise touch the defendant.

Wesley Suski testified that he observed the shooting and that he did not see Garcia strike or otherwise touch the defendant. According to this witness, Garcia did not enter the gangway with the defendant. Prior to the night of the occurrence, Suski had not been acquainted with either Garcia or the defendant.

When called to testify on his own behalf defendant admitted shooting Garcia. Defendant testified that he requested Garcia to serve the children but that he refused to pay the bill when told that it amounted to approximately $12.00. The defendant further testified that he walked away from the ice cream truck and Garcia followed into a passageway between two buildings. There, according to the defendant, Garcia attacked him by pounding his head against the brick wall (approximately six to eight times), hitting him in the chest (allegedly dislocating two ribs) and kicking him in the stomach (allegedly causing hernia). The defendant stated that he kept his gun in his pocket until struck numerous times and then, while in a dazed condition, he started shooting.

The next three occurrence witnesses were: Ruth Warren, the defendant's housekeeper, John W. Trent and Myrtle Dodd. These witnesses testified that they observed Garcia and the defendant engage in an altercation in a passageway. They stated that they observed Garcia hitting and kicking the defendant and pounding his head against a brick wall. They further testified that after being struck several times defendant removed a gun from his pocket and started shooting.

Officer Robert A. Lebak of the Chicago Police Department testified that about twenty minutes after the shooting he arrested the defendant in his apartment. According to this officer, defendant, at the time of his arrest, was wearing a clean white shirt. This witness further stated that there were no apparent wounds, bruises or other marks on defendant's body, and that at the time of his arrest, defendant did not complain of any injuries.

■ In support of his first contention, the defendant has drawn our attention to the following statement made by the trial judge after the State's rebuttal argument and prior to announcing his judgment:

"I would venture to say to Mr. Garcia that if the Defendant had not used a gun, perhaps, you, as the Complaining Witness, would now be on trial for battery of some sort. I don't care what the battery may be, but insofar as I'm concerned, nothing justifies the use of a force of arms."

Reading this statement in the context of the testimony elicited from all the witnesses, we do not agree that the trial judge found that Garcia "did commit an assault and battery upon Scott." The court was asked to determine whether defendant was justified in the use of his pistol. This is dependent upon whether he reasonably feared for his life, or great bodily harm to his person. Ill. Rev. Stat. 1969, ch. 38, sec. 7—1.

██ The witnesses testifying on behalf of the defense stated that they observed Garcia strike the defendant's head several times against a brick wall. They further stated that they observed him hitting and kicking the defendant in the chest and stomach. The defendant testified that as a result of the altercation, he suffered two dislocated ribs and a hernia. If Garcia battered the defendant in the manner described, we would have little difficulty in finding his use of arms justified. We cannot, however, disregard the uncontroverted testimony of Officer Lebak. According to this witness the defendant, at the time of his arrest displayed no visible bruises and his white shirt was clean, revealing no blood stains. Suski, a disinterested witness, corroborated the People's contention. Furthermore, the fact that the defendant did not complain of any injuries at the time of his arrest is highly inconsistent with an assertion of having suffered two dislocated ribs, a hernia and having had his head battered six to eight times against a brick wall. In view of the foregoing, we conclude that the statement of the trial judge relating to the unjustified use of arms constituted his speculation on the situation which might have been presented, "if the defendant had not used a gun."

The defendant has urged that he was not proved guilty beyond a reasonable doubt. We do not agree.

██ It is not questioned that the defendant shot Garcia. The issue therefore is whether the defendant was justified in his use of the gun. The resolution of this issue is dependent upon the credibility of the witnesses. Defendant and those called on his behalf testified to facts showing a justified use of arms for the purpose of self-defense. The witnesses called on behalf of the People testified to facts which support the conclusion that the defendant was not justified in using the gun. An important function of a trial judge is to determine the credibility of the witnesses and the weight to be accorded their testimony. These findings will not be disturbed unless they are so improbable or unsatisfactory as to leave a reasonable doubt as to the defendant's guilt. (*People v. Catlett*, 48 Ill.2d 56, 268 N.E.2d 378.) A careful consideration of the record convinces us that the findings of the trial judge on the issue of self-defense should not be disturbed.

The defendant next urges that his jury waiver was not knowingly and understandingly made. This does not appear to be the case. Prior to trial

the following colloquy transpired between the trial judge, the defendant and his attorney:

"Mr. Berkos: (The defendant's attorney) Defense is ready to proceed at this time.

The Court: You waive the jury?

Mr. Berkos: Yes, your Honor.

The Court: He understands the consequences of waiving a jury?

Mr. Berkos: Yes.

The Court: Mr. Scott, is it your desire to try this case before me without a jury?

Mr. Scott: (the defendant) Yes, sir, on my attorney's advice. I agree with him.

The Court: All right, fine."

■■ The decision of our Supreme Court in *People v. Sailor*, 43 Ill.2d 256, 253 N.E.2d 397, disposes of his contention. There, in the defendant's presence her attorney waived the right to be tried before a jury. In finding the defendant to have acquiesced in her attorney's action, the Court in *People v. Sailor* adopting the language of *People v. Melero*, 99 Ill.App. 2d 208, 211-212, 240 N.E.2d 756 at 758, said:

"* * * the trial court was entitled to rely on the professional responsibility of defendant's attorney that when he informed the court that his client waived a jury, it was knowingly and understandingly consented to by his client. Defendant is not permitted to complain of an alleged error which was invited by his behavior and that of his attorney."

We conclude that in the instant case, defendant was adequately advised of his right to trial by jury and that his waiver of this right was knowing and understanding. See *People v. Suriwka*, 2 Ill.App.3d 384, 276 N.E.2d 490.

■■ Finally, defendant maintains that the sentence of five to ten years in the penitentiary is excessive and should be reduced. We agree. Defendant was 65 years of age at the time of his trial and had not been previously convicted of a crime. We are of the opinion that the ends of justice will be better served by reducing the sentence. The judgment is modified to a sentence of not less than three nor more than ten years in the penitentiary and is affirmed as modified.

Judgment affirmed as modified.

GOLDBERG, P. J., and LYONS, J., concur.