THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES WASHINGTON, Defendant-Appellant.

(No. 59925;

First District (4th Division)—February 13, 1975.

632

James J. Doherty, Public Defender, of Chicago (Ivan Bruce Wexler and James Sammons, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Mary Ellen Dienes, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE ADESKO delivered the opinion of the court:

The defendant, James Washington, was indicted for the murder of Glen Williams and in a bench trial he was found guilty. He was sentenced to a term of not less than 20 nor more than 30 years in the State penitentiary. Defendant now appeals and maintains that the trial court erred in not granting his motion to suppress a statement he made to the police and that the State failed to prove him guilty beyond a reasonable doubt. We do not agree.

There is no question in this case but that the defendant shot and killed Glen Williams. The State's theory of the shooting is that it constitutes the offense of murder, while the defendant maintains that he acted in self-defense.

At trial, Officer Boleslaw Filipiak of the Chicago Police Department testified that on June 30, 1972, he was assigned to investigate a shooting that had occurred at 1142 E. 63rd Street. Officer Filipiak and two other policemen received a communication that a suspect had been chased into an apartment building at 6213 S. Greenwood, and they proceeded to that address. Upon arriving at 6213 S. Greenwood, Officer Filipiak entered a first-floor apartment that was occupied by Minnie Williams. After Officer Filipiak spoke with Minnie Williams for approximately 20 minutes, she led him and the other policemen present down to the basement of the apartment building. She unlocked the basement door, entered and came out with the defendant.

Officer Filipiak testified that as soon as the defendant came out of the basement, he asked, "Is he dead?" Officer Filipiak then stated that he advised the defendant of his constitutional rights and that defendant asked again, "Is he dead?", and Officer Filipiak responded, "Yes, he is." The defendant was then transported to a police station.

The next witness to testify on behalf of the State was Investigator Anthony Katalinic of the Chicago Police Department. Investigator Katalinic testified that on June 30, 1972, at approximately 6:55 P.M., he responded to a call that a man had been shot on the street at 1142 E. 63rd. Upon arriving at the scene, Investigator Katalinic observed a man lying in the street in a large pool of blood. It was determined that the man was dead and that his name was Glen Williams. Investigator Katalinic left the scene of the shooting and went to the Woodlawn Hospital to note the injury to the victim. While at the hospital, Investigator Katalinic was advised that the defendant, James Washington, had been taken into custody. Officer Katalinic then proceeded to area 2 homicide.

At area 2 homicide Investigator Katalinic informed the defendant of his constitutional rights and asked him if he wanted to make a statement. Investigator Katalinic testified that the defendant stated that he did not wish to make a statement. The assistant State's attorney then asked the following question, and Investigator Katalinic gave the following response:

"Q. And subsequent to that time was anything said in your presence in the presence of James E. Washington?

A. Yes, James Washington stated that the deceased and his other friend had been bothering him and harassing him and that they had taken his car. He stated, 'Yes, I shot him.'"

Investigator Katalinic testified this statement was not made in response to any questioning of the defendant by himself or any other police officers.

The next witness called by the State was George Williams, the brother

of the victim. He stated that on June 30, 1972, at approximately 7 P.M., he and his brother Glen Williams and a friend by the name of Leon Ferguson were walking down 63rd and University. Williams stated that he and Ferguson were walking together and that Glen was about 10 feet ahead of them. Williams testified that he saw a man approach whom he knew as "Fats" and made an in-court identification of the man as the defendant, James Washington. Williams stated that he saw the defendant pull out a shotgun and fire at the back of Glen Williams. According to Williams, Glen fell off the curb, and then the defendant ran up behind him and fired again. Williams and Leon Ferguson chased the defendant and saw him enter an apartment building at 6213 S. Greenwood. They then returned to the scene of the shooting and encountered two policemen. Williams told them where defendant had fled. Williams was then taken to the Woodlawn hospital and then to area 2 homicide. He testified that while at area 2 homicide he saw the police bring in the defendant.

The defense called Benita McNeal, the sister of the defendant, and she testified that the deceased Glen Williams, his brother George Williams and several other men frequented the house of the defendant several times during the month preceding the shooting. She stated that the deceased, his brother George and the other men came to the defendant's house armed and looking for the defendant. She testified that on one of these visits, Glen Williams told her and her sister-in-law, Minnie, that if they did not tell him where the defendant was, he and the other men would kill them. Mrs. McNeal stated that he repeatedly reported this harassment and intimidation to the police department.

The defendant testified on his own behalf and stated that be shot Glen Williams only after Glen Williams fired at him with a .22-caliber revolver. The defendant testified that this bullet struck him in his right palm between his first finger and thumb. According to defendant, Glen and George Williams and several other men harassed him and his wife on several occasions during the month preceding the shooting. Defendant testified that the deceased made demands for money to him and threatened to kill defendant if he did not meet those demands. After the shooting, defendant ran from the scene and stated that he was being chased by about 20 men. He testified that he was carrying a shotgun on the date in question because his life had been threatened. Defendant also stated the wound on his right hand was not treated until July 1 at the Cook County Jail. It was stipulated between the State and defense that on July 1, 1972, defendant was treated in the Cook County Jail for an abrasion to the right hand.

In rebuttal, George Williams testified that during the month of June,

1972, he did not go to the defendant's apartment and have a conversation with the defendant's wife. He also stated that he never saw his brother go to the defendant's apartment and engage in a conversation with the defendant's wife. Williams denied that he knew the defendant's sister, Benita McNeal, and stated that when his brother was shot, he did not see a weapon in his brother's hand.

Investigator Katalinic also testified in rebuttal and stated that when he investigated the scene of the shooting he did not find a weapon in the area. He stated that he was in the presence of the defendant at area 2 homicide for approximately 2 to 2½ hours and during that time the defendant never complained about any injury nor requested medical treatment. Officer Filipiak stated in rebuttal that while the defendant was at area 2 homicide, he noticed a minor cut on the defendant's hand but that the defendant never complained of suffering from a gunshot wound.

At the conclusion of the evidence and closing arguments, the trial court stated that it disbelieved the defendant's version of the incident and found defendant guilty of murder. After a hearing in aggravation and mitigation, the defendant was sentenced to a term of not less than 20 years nor more than 30 years in the State penitentiary.

The first issue raised on appeal is that the trial court erred in not granting defendant's motion to suppress the statement he made to the police that he had shot Glen Williams. The basis for this contention is that statements obtained by interrogation following a request for counsel must be suppressed and that the defendant's will was overborne by the forces of psychological coercion to the extent that no statement obtained from the defendant could truly be the product of his free choice. At the hearing on the motion to suppress, Investigator Katalinic testified essentially as he did at trial. He stated that after he advised defendant of his constitutional rights he asked defendant if he wished to make a statement and that defendant responded negatively. Investigator Katalinic testified that defendant requested to speak to his wife and that he heard defendant say to her to call his attorney. Investigator Katalinic stated that after defendant indicated he did not wish to make a statement no more questions were asked and that the statement made by the defendant was not the result of any further interrogation by himself or any other officers in Katalinic's presence. He denied that the defendant was subjected to any physical or mental coercion. There was no evidence introduced that would conflict with or rebut the testimony of Investigator Katalinic.

■■ The defendant correctly maintains that statements obtained by interrogation following a request for counsel must be suppressed. How-

ever, the record is clear that in the case at bar the statement made by defendant was not the result of any interrogation by the police. As our Supreme Court stated in *People v. Bey*, 45 Ill.2d 535, 539, 259 N.E.2d 800, 802 (1970): "The sole application of *Miranda* is to statements elicited through custodial interrogation; 'By custodial interrogation, we mean questioning initiated by law enforcement officers  *  *  *.' (384 U.S. at 444, 16 L.Ed.2d at 706, 86 S.Ct. at 1612.)" The celebrated case of *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed.2d 694, 86 S.Ct. 1602 (1966), does not affect the admissibility of volunteered statements. The United States Supreme Court stated:

> "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence.  *  *  *  Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (384 U.S. 436, 478, 16 L.Ed.2d 694, 726.)

The trial court's decision to deny the motion to suppress was an implicit finding as to the voluntariness of the defendant's statement. This decision as to the voluntary nature of the defendant's statement will not be set aside by a reviewing court unless contrary to the manifest weight of the evidence. (*People v. Pittman*, 55 Ill.2d 39, 302 N.E.2d 7 (1973).) After carefully reviewing the record, we are of the opinion that the trial court's decision to deny the motion to suppress was eminently correct.

■■  In regards to defendant's contention that this will was overborne by the forces of psychological coercion to such an extent that no statement made by him could be the product of his free choice, we note that the record is devoid of any evidence of physical or mental coercion. The record clearly supports the conclusion that the defendant's statement was free and voluntary and, therefore, properly admitted into evidence.

■■  The defendant also maintains that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. This contention places into question the credibility of the witnesses at trial. It is the duty of the trier of fact to determine the credibility of the witnesses and the weight to be accorded to their testimony. Its findings will not be disturbed by a reviewing court unless they are so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. (*People v. Scott*, 6 Ill.App.3d 281, 285 N.E.2d 476 (1972.) We have thoroughly reviewed the record in the case at bar, and we cannot conclude that the trial court's determination of guilt is so improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt.

■■ In his brief the defendant argues alternatively that since the uncontradicted evidence supports his belief that the use of deadly force was necessary to save his own life then at most his belief was unreasonable and, therefore, only a conviction for voluntary manslaughter can be sustained. However, the trial court did not believe the defendant's version of the shooting, and, as previously stated, we cannot conclude that the trial court's finding was so improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt. The provision in our Criminal Code regarding voluntary manslaughter (Ill. Rev. Stat. 1973, ch. 38, par. 9—2) does not, therefore, come into consideration.

For the reasons herein stated the judgment of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

DIERINGER, P. J., and BURMAN, J., concur.