THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHESTER HANCOCK, Defendant-Appellant.

First District (2nd Division)    No. 79-203

Opinion filed April 29, 1980.

Elliot Samuels, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Pamela Moran, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DOWNING delivered the opinion of the court:

Defendant, Chester Hancock (Hancock), was charged by information with attempt murder, three counts of aggravated battery, and two counts of armed violence. A jury found Hancock guilty of two counts of aggravated battery and one count of armed violence. He received a sentence of six years. Hancock appeals the judgment below and asks this court to consider (1) whether the testimony of an assistant state's attorney who stated he approved the placing of criminal charges

against Hancock denied Hancock a fair trial; (2) whether the verdicts of the jury were legally inconsistent; and (3) whether the State failed to prove his guilt beyond a reasonable doubt.

Several witnesses testified as to the events leading up to the charged offenses. The following preliminary account is uncontradicted.

On August 5, 1978, Hancock left his Evanston, Illinois, home for work earlier than usual. He had been married to his wife, LaRosa, for five years, but had recently grown suspicious of her behavior toward him. He wanted to learn about her daytime activities. He therefore started and finished his workday early, left for home around 11 a.m., and parked his car within sight of his wife's automobile. He waited a short time until LaRosa got into her car and drove away. He followed her to a restaurant parking lot at 5900 North Clark Street, Chicago. She parked within the lot while he parked across the street. A couple of minutes later he saw her enter the car of the complaining witness, Ira Washington. The couple, sitting closely together, drove away.

Hancock was very upset. He testified at trial that "if [he] had had a gun or something at that particular time, [he] probably would have shot both of them." He went home, got his camera and a pistol, and asked his 18-year-old nephew, Randy Rosema, to accompany him to the parking lot. Hancock testified that he carried the gun for protection in fear of Washington's conduct toward him. He knew Washington only as a friend of LaRosa's brother. They had no prior contact with each other. Hancock borrowed his sister-in-law's car and drove his five-year-old daughter and his nephew to the lot.

When Hancock returned to the lot he parked his sister-in-law's car in the same parking lane as, and approximately one car length behind, LaRosa's car. Fifteen minutes later LaRosa and Washington returned to the lot and stopped beside LaRosa's automobile. Hancock and his daughter got out of their car, and he began to take photographs of the two cars used in the midday rendezvous. Hancock testified he was not as upset at seeing the two together this time as he had been the first time. During the course of his picture taking, he observed that his wife recognized him and that she said something to Washington.

The events that followed are in dispute. The testimony of each witness is summarized below.

Ira Washington testified that at all pertinent times his car was in a forward gear. When he pulled his car up along LaRosa's, he applied his brakes to stop. While sitting in the car, LaRosa said, "There is Chester." He turned his head and saw Hancock standing 10 to 15 feet behind Washington's car, pointing something at him. Within a few seconds he saw the rear window of his car begin to shatter and fall out. Washington immediately drove forward to exit the lot. When he approached the

street he turned his head again to see if Hancock was following him. As he turned he felt a pain in his left side. He quickly drove to a nearby hospital emergency room where his condition was diagnosed as a collapsed lung resultant from a bullet which entered his right shoulder. He received 31 stitches and was hospitalized for about two weeks.

John Wilson, a police officer, testified that he had a conversation with Hancock at approximately 4 p.m., in the presence of Investigator Thun at the 20th District police station. After Hancock acknowledged his *Miranda* rights, he volunteered an account of the events. Hancock said he approached Washington's stopped car and took two or three snapshots with his camera. "[T]he car attempted to either pull away from him or back away from him, and he, with the hand gun that he had, fired several shots into the car." He told Wilson he was aware that he hit Washington. He also said he was glad, under the circumstances, that he hit Washington. Hancock then said he returned to Evanston and turned himself in at the local police station.

Paul Kelly, an assistant state's attorney, testified he spoke with Hancock at about 7 p.m., in the 20th District police station. His testimony was consistent with Wilson's. In addition, Hancock told him that Washington's car was stationary at the time he fired his handgun.

Randy Rosema testified that he sat on the passenger side of the car Hancock drove to the lot. He watched Hancock, who was about five feet to the rear of Washington's stopped car, take a few snapshots. Suddenly, he saw the car move backward for an unknown distance at a "real fast speed." Simultaneously, he saw Hancock drop the camera, remove himself and his daughter from the vehicle's path, raise a handgun to an aiming position, and fire it toward the car. Alternatively, his testimony indicates the car may have been moving forward at the time Hancock fired the pistol. When Hancock fired the last of his shots Rosema saw the vehicle exit the lot. Rosema testified he saw the rear window of Washington's car shatter when it was either beside LaRosa's car or going around a corner to exit the lot.

Hancock also testified. He stated he took three or four different photographs of Washington's car as it was stopped beside LaRosa's. LaRosa noticed him when he was about six or seven feet to the rear of the vehicle. He testified that Washington put the car in reverse and came back at a high rate of speed. He stated he then pushed his daughter out of the way, pulled the pistol out from his belt, and fired two bullets. He then jumped out of the car's path. The car continued to back up until its right front door was within Hancock's reach. He fired a third shot about 30 seconds after the car began to go in reverse. One of the bullets shattered the rear window. Washington then drove his car forward and out of the parking lot. Hancock then testified he returned to Evanston.

Hancock was charged with one count of attempt murder, three counts of aggravated battery, and two counts of armed violence. At trial one count of aggravated battery which caused permanent disfigurement was dismissed. Hancock argued to the jury that his conduct was justified in self-defense of Washington's automobile use. The jury found Hancock guilty of two counts of aggravated battery and one count of armed violence.

## I.

Hancock contends first that he was denied a fair trial. He claims he was highly prejudiced when the following exchange occurred during redirect examination of assistant state's attorney Kelly:

> "Prosecutor: You indicated that, in fact, part of your duties in the Felony Review System were to evaluate this case and decide whether or not to approve charges [against Hancock]?
> Kelly: Yes.
> Q: Did you, in fact, approve charges?
> A: Yes, I did."

Hancock argues Kelly's statements constitute improper testimony regarding a prosecutor's own opinion that Hancock is guilty of the crimes charged. See, *e.g., People v. Blissitt* (1973), 12 Ill. App. 3d 551, 554, 299 N.E.2d 562.

■■ We note, however, that contrary to the facts in *Blissitt*, Hancock failed to object to Kelly's testimony at trial, and the issue was absent from his written post-trial motions. Thus, as the State contends, Hancock waived appellate review of the issue. (See *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856; *People v. Trefonas* (1956), 9 Ill. 2d 92, 98, 136 N.E.2d 817; Ill. Rev. Stat. 1977, ch. 38, par. 116—1.) Moreover, we believe Hancock's contention is without merit.

■■ First, it is well established that a defendant may not complain about a line of inquiry which he has invited. (*People v. Lonzo* (1977), 47 Ill. App. 3d 939, 943, 365 N.E.2d 528, *appeal denied* (1977), 66 Ill. 2d 634; *People v. Carbona* (1975), 27 Ill. App. 3d 988, 1007, 327 N.E.2d 546, *appeal denied* (1975), 60 Ill. 2d 598, *cert. denied* (1976), 424 U.S. 914, 47 L. Ed. 2d 319, 96 S. Ct. 1114.) Kelly's statements were substantially similar to and invited by the following exchange during his prior cross-examination.

> "[Hancock's Attorney]: In your job as an assistant State's Attorney assigned to the Felony Review Division of the State's Attorney's office it is your function, is it not, to discuss with prospective complaining witnesses and Police Officers the merits of cases and things of that nature?
> [Kelly]: That is correct.
> Q: You actually review what evidence there is, if any, and make

a determination of whether or not there should be a charge placed?

A: That is correct.

Q: You did that, did you not, in this instance?

A: Yes, sir."

Thus, Hancock cannot complain of Kelly's statements as elicited by the State.

■ Second, Hancock's argument fails to show how Kelly's remarks denied him a fair trial. "[I]t is implicit that any jury in the ordinary course of events is informed that some member of the State's Attorney's office authorized the filing of charges against the accused when the charging document is read to it." (*People v. McKnight* (1979), 72 Ill. App. 3d 136, 145, 390 N.E.2d 379.) We do not believe the identification of Kelly as *the* individual who authorized the filing of charges operated to prejudice the jury any more than the reading of the charging document itself. Furthermore, an examination of the record, as discussed below, compels us to conclude that the jury's verdicts would not change in the absence of Kelly's statements.

## II.

■ Hancock next contends that his convictions should be reversed because the jury returned inconsistent verdicts. He argues that consistency is required; that charges against him were identical according to the instructions given; that the jury must have accepted his self-defense theory because he was acquitted of the attempt murder charge; and therefore he could not, with legal or logical consistency, be found guilty of aggravated battery. We disagree.

The elements of the offenses of attempt murder and aggravated battery are different. Conviction for the crime of attempt murder requires a finding that the defendant specifically intended to kill the victim,[1] while aggravated battery requires no specific intent. (*People v. Taylor* (1965), 56 Ill. App. 2d 170, 173, 205 N.E.2d 807, *appeal denied* (1965), 32 Ill. 2d 626.) Thus, the jury could have properly found that the specific intent to murder was absent when they acquitted Hancock of attempted murder. The jury was not required to accept the theory of self-defense to reach such a verdict. In fact, their finding of guilt on the aggravated battery charges directly refutes Hancock's speculation. The record discloses no inconsistency, legal or logical.

---

[1] The instruction given to the jury properly stated the specific intent requirement as follows:

"[T]hat the defendant [acted] with the intent to kill Ira Washington, or, that the defendant knew his acts created a strong probability of death to Ira Washington ⁂."

The last clause of the statement has been approved in *People v. Morano* (1979), 69 Ill. App. 3d 580, 586, 387 N.E.2d 816. In *People v. Tamayo* (1978), 73 Ill. 2d 304, 310, 383 N.E.2d 227,

## III.

Finally, Hancock claims the State failed to meet its burden of proof. Hancock properly contends that the State must prove beyond a reasonable doubt not only that he committed each element of the charged offenses, but also that he did not act in self-defense. (See generally *People v. Burnett* (1975), 35 Ill. App. 3d 109, 121, 341 N.E.2d 86; *People v. Perkins* (1973), 11 Ill. App. 3d 828, 830, 297 N.E.2d 669.) He maintains that Washington's credibility was sufficiently negated by Rosema's and his testimony on the issue of self-defense. Furthermore, he argues, testimony by three character witnesses in his behalf may be sufficient to raise a reasonable doubt of guilt. See generally *People v. Bush* (1972), 4 Ill. App. 3d 669, 674, 281 N.E.2d 734; *People v. Mostafa* (1971), 5 Ill. App. 3d 158, 179, 274 N.E.2d 846, *appeal denied* (1972), 49 Ill. 2d 576.

Where, as in the instant case, there is conflicting testimony, it is within the province of the jury to determine the credibility of witnesses and, accordingly, weigh their testimony. A court of review should not disturb a jury's finding "concerning credibility, weight, and inferences unless the evidence is so unsatisfactory, improbable, or implausible as to raise a reasonable doubt of the defendant's guilt. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595." (*People v. Todorovic* (1977), 53 Ill. App. 3d 1, 12, 368 N.E.2d 471.) A review of the record convinces this court that Hancock was properly found guilty beyond a reasonable doubt.

It is obvious Hancock's testimony was rejected by the jury. Rosema's testimony on critical facts was often unclear or contradictory. Testimony by Officer Wilson and Assistant State's Attorney Kelly indicated that when they spoke to Hancock, within hours after the shooting, he did not attempt to justify his conduct as resultant from fear for his or his daughter's life. The jury presumably weighed Washington's testimony against Hancock's and based their finding upon a judgment of credibility. Although three witnesses did testify regarding Hancock's good character, that testimony, in light of all the evidence, was apparently insufficient to raise a reasonable doubt. The record indicates that the evidence adduced at trial was not "so unsatisfactory, improbable, or implausible as to raise a reasonable doubt" of Hancock's guilt. See *People v. Todorovic*, 53 Ill. App. 3d 1, 12; *People v. Scott* (1972), 6 Ill. App. 3d 281, 284, 285 N.E.2d 476.

---

our supreme court held it to be error for an instruction on attempt to contain the phrase, "knew his acts created a strong probability of *great bodily harm* ° ° °." (Emphasis added.) (See also *People v. Harris* (1978), 72 Ill. 2d 16, 26-27, 377 N.E.2d 28.) The instant instructions do not contain the objectionable language found in *People v. Tamayo* and *People v. Harris.* Therefore the jury was properly instructed.

In accordance with the aforesaid reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

PERLIN, P. J., and STAMOS, J., concur.