*In re* JOEL L., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Joel L., Respondent-Appellant).

Fourth District    No. 4—02—0800

Opinion filed January 15, 2004.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

John P. Schmidt, State's Attorney, of Springfield (Norbert J. Goetten and Robert J. Biderman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 2002, the trial court adjudicated respondent, Joel L., a delinquent minor and found Joel in violation of his probation. In September 2002, the court held a dispositional hearing and ordered Joel committed to the Juvenile Division of the Department of Correction (DOC). Joel appeals, alleging that the State failed to prove that a police officer engaged in official duties was battered and that the charging instrument was void as a matter of law. We affirm.

## I. BACKGROUND

On May 16, 2001, the trial court adjudicated Joel a delinquent minor and placed him on probation for two years. On March 6, 2002, the State filed a petition to revoke Joel's probation. On May 24, 2002, the State filed a supplemental petition to revoke probation. The supplemental petition alleged battery (720 ILCS 5/12—3(a)(2) (West 2000)) and aggravated battery (720 ILCS 5/12—4(b)(6) (West 2000)). Also on May 24, 2002, the State filed another petition for adjudication of delinquency, making the same allegations. On July 12, 2002, the State filed another supplemental petition to revoke probation, alleging additional probation violations.

On July 29, 2002, the trial court held a hearing on the May 24, 2002, supplemental petition to revoke probation alleging battery and aggravated battery, and the May 24, 2002, petition for adjudication of delinquency alleging the same grounds. The State chose to proceed only on the aggravated battery count alleging bodily harm to Jason Lewis, asserted to be a peace officer engaged in the execution of his official duties.

At the time of this incident, Joel was 15 years old and a student at an area special education district facility. His record indicates depression and anxiety with particular disability to control acting out as a result of panic. There is further indication that only a highly structured and controlled environment has provided any modification in Joel's behavior.

On May 21, 2002, Joel was attending Sangamon Area Special Education District (SASED), which he had attended since approximately the end of April 2001. Lewis testified that he was a police officer with the Springfield police department (SPD). He further testified that SASED hires police officers to provide security for the school, and SASED had hired him as security for the school. He was in his third school year at SASED. When working as security at SASED, he did not wear a uniform, but wore a Springfield police shirt (which he described as a polo shirt with an SPD logo) and carried a badge, a firearm, and handcuffs.

Lewis testified that he was asked to deal with a disturbance involving Joel. He escorted Joel to the principal's office. The principal began talking to Joel about the incident, and that was when Joel started making threats toward another student and yelling about the situation. At that point, Lewis put Joel in handcuffs. Lewis testified that "I felt for everyone's safety, myself[,] and hisself [*sic*], the principal, anybody that was in that area—." After placing Joel in handcuffs, Lewis forcibly placed Joel in the chair because Joel refused to comply with Lewis's request to sit down. Lewis testified that he had not told Joel he was under arrest.

After Joel was placed in the chair, Lewis seated himself in another chair and began to complete paperwork. Almost immediately thereafter, Joel kicked the table, which was pushed against a second table. Lewis was sitting at the intersection of the two tables, and his arm was pinched between the tables, causing a cut and bruise. Lewis testified that he cleaned the cut at the school and did not go to the hospital.

The trial court found Joel committed aggravated battery thereby violating his probation. The court adjudicated Joel a delinquent minor and set the matter for a dispositional hearing.

In September 2002, the trial court committed Joel to DOC. The trial judge indicated that Joel has "emotional/mental health problems, which nobody has ever put their finger on *** I really don't understand what Joel's emotional problems are ***. My biggest problem with Joel is he's got some sort of underlying psychiatric or mental health or severe emotional problems that I don't really understand what they are." The common-law record is replete with numerous incidents of "acting out" behavior, manifesting itself in batteries and burglaries. This appeal followed.

## II. ANALYSIS

Joel argues that the State failed to prove an essential element of aggravated battery of a police officer in the course of performing his official duties, namely, that a police officer was battered, and, second, that the charging instrument was void as a matter of law in that the alleged battery was not committed upon a police officer during the course of his official duties but on an off-duty police officer "moonlighting" as a security guard. We disagree.

### A. Standard of Review

■ "When a defendant challenges the sufficiency of the evidence, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *In re J.A.*, 336 Ill. App. 3d 814, 816, 784 N.E.2d 373, 375 (2003), citing *Jackson v. Virginia*, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

### B. The State Proved the Battery Was Committed Upon a Peace Officer Performing Official Duties

■ In this case, to establish aggravated battery against a peace officer the State must prove that (1) Joel intentionally or knowingly caused bodily harm (2) knowing the individual harmed to be a peace officer (3) who was performing official duties. See *People v. Barrett*, 54 Ill. App. 3d 994, 370 N.E.2d 247 (1977); *People v. Brown*, 18 Ill. App. 3d 1049, 310 N.E.2d 498 (1974).

■ The testimony demonstrates that Joel knowingly kicked the table. Lewis testified that Joel's kick would have hit him if the table legs had not been between them. Joel testified that he knew he kicked the table, but that he did not see that it would hit Lewis. When viewed most favorably to the prosecution, one must conclude that Joel's conduct in kicking the table was intentional and the bodily harm from that intentional act naturally resulted.

The second element of aggravated battery of a police officer engaged in official duties is that the respondent knows the individual is a police officer. Although Lewis was not in uniform, he wore a polo shirt with an SPD insignia and had his badge, his weapon, and handcuffs. The record indicates that Lewis had worked at the school for three years. Even though no testimony shows Joel's knowledge of Lewis's status, the record indicates that Joel had attended SASED since the end of April 2001.

In support of his argument, Joel cites *People v. Bush*, 4 Ill. App. 3d 669, 281 N.E.2d 734 (1972), where the appellate court reversed the conviction of a 63-year-old citizen who had been acquitted of public

indecency but convicted of resisting arrest based upon testimony that the younger, larger, casually dressed police officer was not credible. The court, while emphasizing the numerous inconsistencies in the police officer's testimony and the jury's acquittal on the underlying charge, noted that it was reasonable for the defendant to have questioned whether the police officer was really a police officer given his casual attire and the fact that the defendant was being approached in a public rest room. *Bush*, 4 Ill. App. 3d at 673, 281 N.E.2d at 737.

In contrast, here, Joel would have no reason to question Lewis's position and purpose at his school. Although no testimony in the record shows whether Joel knew Lewis was a peace officer engaged in the execution of his official duties of providing security to the school, testimony showed that SASED hires police officers to provide security for the school. At the time of the incident involving Joel, Lewis was on his third year at SASED. While on duty, Lewis was wearing a polo shirt that displayed the SPD logo and had his badge, firearm, and handcuffs. In addition, Joel had attended SASED for over a year at the time of the incident. When viewed in the light most favorable to the prosecution, we conclude that Joel knew of Lewis's status as a police officer.

The third element to be established is whether Officer Lewis was engaged in official duties. In *Barrett*, the court concluded that "an officer's duties are not constrained by specific time or place limitations." *Barrett*, 54 Ill. App. 3d at 997, 370 N.E.2d at 249.

In *People v. Weaver*, 100 Ill. App. 3d 512, 514, 426 N.E.2d 1227, 1228 (1981), this court concluded that "a police officer has the duty to maintain public order wherever he may be, as long as he is within the State. His duties are not confined to a specific time and place."

We find no "police-officer-as-school-security-guard" cases in Illinois. However, in *State v. Duvall*, No. 95—P—0140 (Ohio Ct. App. 11 Dist. June 6, 1997) (1997 WL 360695), the Ohio Appellate Court considered a claim that a police officer who was "moonlighting" as a security guard for a school district at a football game was in performance of his official duties when he was assaulted by the defendants. The Ohio court concluded that the issue was not whether an officer was "on duty" or "off duty" or being paid by the police employer or by a school system but whether the officer was engaged in official duties. "[I]t is clear to this court that [the officer] was performing an official duty by patrolling or monitoring the crowd and by attempting to 'preserve the peace.' " *Duvall*, slip op. at ___ (1997 WL 360695 at *5). (We note *Duvall* is an unpublished opinion issued in 1997, prior to the Ohio Supreme Court's rule change that stated such opinions issued "after the effective date of these rules may be cited as

legal authority and weighted as deemed appropriate by the courts" (Ohio Rev. Code Ann. Rep. R. 4(B) (West 2003)) (adopted eff. May 1, 2002); prior to adoption of that rule, unpublished opinions were not controlling except as specified and were persuasive only in the judicial district in which rendered (3 Ohio St. 3d Rep. Rs. 2(G)(1), (G)(2) (eff. March 1, 1983)).

When viewed in the light most favorable to the prosecution, we must accept the trial court's conclusion that the testimony established that Joel knew that Lewis was a peace officer and that Lewis was engaged in official duties for the purposes of the elements of the criminal statute (720 ILCS 5/12—4(b)(6) (West 2000)). Consequently, the State proved beyond a reasonable doubt Joel was guilty of aggravated battery of a peace officer in the course of official duties.

## C. The Charging Instrument

■ Joel also argues that the charging instrument was void as a matter of law because Lewis was off duty, working as a security guard and not a police officer during the course of official duties. Because we have determined that Lewis's duties as a police officer were not confined to a specific time and place and, therefore, extend to wherever he may be, as long as he is within the state (*Weaver*, 100 Ill. App. 3d at 514, 426 N.E.2d at 1228), we conclude that the charging instrument was not defective, and we need not address Joel's argument further.

## III. CONCLUSION

For the forgoing reasons we affirm the trial court's judgment.

Affirmed.

COOK and McCULLOUGH, JJ., concur.