THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES J. MYERS, Defendant-Appellant.

(No. 72-55;

Fifth District—April 10, 1974.

Richard G. Younge, of East St. Louis, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (James W. Jerz and Martin P. Moltz, of Model District State's Attorneys Office, of counsel), for the People.

Mr. JUSTICE CREBS delivered the opinion of the court:

Defendant was indicted for murder and, in a jury trial in the Circuit Court of Madison County, he was convicted of the lesser offense of voluntary manslaughter. He was sentenced to the penitentiary for a term of not less than 4 nor more than 12 years. In this appeal defendant contends that under the law of self-defense he was not proven guilty beyond a reasonable doubt, and, in the alternative, that the cause should be reversed and remanded because the State wrongfully withheld from him certain favorable evidence.

The victim, John Valle (hereinafter referred to as John), age 19, lost his life on the night of September 11, 1971, in a fight in a parking area below the Chain of Rocks Bridge. He and a group of his friends had come to the area earlier in the evening in two cars and had roasted marshmallows and drunk a few beers. Later defendant, accompanied by his brother and their two girl friends, drove in and parked some distance away. There were also a number of other cars and young people present.

Just prior to the incident leading up to the fight the victim and five of his friends, three boys and two girls, were sitting in his car. According to one of the boys, the defendant walked over and asked him if he wanted to sell or trade the tape they were playing. On being refused, he left and then came back in about 5 minutes and again asked about buying the tape. At this time, one of the girls in the back seat threw some chipped ice at the witness because he previously had thrown some ice down her back. Some of the ice hit defendant and he got mad because his pants got wet. He said, "If that were my bitch, I'd smash her in the head." He then left again but came back immediately, this time shirtless and with a knife in his hand with a blade about six inches long. He was accompanied by his brother who was carrying a jack handle. At this time the victim was standing outside the car, leaning on it and talking to those inside. Defendant again protested about being hit with the ice, and he would not accept the witness' explanation that the ice had been thrown at him and not defendant. He persisted in arguing and called the girl a "whore". When she got out of the car demanding to know what he called her, he punched her in the chest causing her to

fall against the car. Then everybody got out of the car. The witness stated that he and John got both girls back in the car and then, as he turned around, he saw that John and defendant were fighting. Defendant's brother was swinging the jack handle, keeping everybody away. The two who were fighting had fallen to the ground and by the time the witness got to them John was getting up and he was all covered with blood. As John walked back to the car it appeared that defendant was going to stab him again and one of the fellows kicked him in the chest to stop him. As John reached the car he fell, bleeding badly. The defendant and his brother then ran to their car and left.

Other witnesses told substantially the same story but added some details. One girl testified that when defendant knocked the wind out of her sister he said, "Come on. I'm going to take you all on." John then pushed her and her sister back in the car in an attempt to leave. The next thing she knew John and defendant were fighting and when she heard someone yell that John had been stabbed she ran over to another car to get the boy with whom she had come. He had gone a short distance away to talk with some other fellows about the car they were driving, and had not been present at the start of the incident. When this witness ran up, he said the defendant and John were on the ground. He could see the knife and saw defendant stab John twice. When John got up and started to walk away it looked as if defendant was going to stab him again, so the witness kicked defendant in the chest to stop him. Another occupant of John's car said he saw defendant's knife and that it had about a 5-inch blade. When John stumbled to the car the defendant yelled, "Come on. I'll take somebody else on." Another boy testified that he did not see the fight start, nor did he see the knife, but he did see defendant's brother swinging the jack handle. He also testified, as did all of the state's witnesses, that no one of them ever attacked or touched the defendant other than the boy who kicked him to keep him from stabbing John again.

It was stipulated that John died at the scene by reason of multiple stab wounds. From other testimony it was determined that there were five stab wounds in the chest and stomach area, one about 14 inches below the back of the neck in line with the spinal cord, and one large laceration in the left arm.

Defendant testified that he made only one trip over to John's car to inquire about buying or trading for the tape and his brother came with him then. The girl threw ice on his brother and then twice on him, getting his new pants wet. He told the man in the front seat, "If that was my girl, I'd slap her right in the mouth." He said he told everybody he didn't want any trouble, but when the girl got out of the car and started calling him all kinds of vile names, he pushed her. A man then

grabbed him. He pleaded with him to let go, but the man threw him and was choking him, and the other men were kicking and hitting him. Finally, he said he got his knife out of his pocket, opened it and struck out wildly with it. Nonetheless, they continued beating him, he said, until his girl turned the lights on in his car, and when they saw the knife, they all got up and left him alone. He said he was choked twice but he did not know if it was the same fellow as it was too dark, and one man kicked him in the face. His only intention in swinging the knife was "to get those people away from me." He testified that as he ran to his car he threw the knife away.

Defendant's brother said the girl threw three cups of ice on defendant and one on him; that defendant called her a bitch, and then when she got out of the car and cursed him, defendant pushed her. He and defendant then started to leave but three or four men came running and one grabbed defendant around the neck and wrestled him to the ground, and three or four more jumped on him. Defendant yelled for help so the witness went back to the car, grabbed a jack handle, and started swinging it, not to hurt anybody, but just to scare them. He testified that the defendant was on the ground and they were kicking and hitting him. Finally, he got them off defendant and then six or seven went after him but he chased them back. In the meantime three or four more were back on defendant and had him down on the ground. When the witness got them off defendant again, he told defendant to run back to the car, and he and defendant ran back to the car through a barrage of bricks and rocks. The two girls stated that they did not leave the car, but they could hear some of the words being exchanged. They said they saw some man grab defendant and a number of others jump on him, kicking him. They also stated that defendant's brother came back to the car and got the jack handle and then he was attacked by several men. Finally, they said the boys were able to get back to the car and leave, and defendant's eye and nose were bleeding.

■■ It is true, as defendant contends, that the burden of proof never shifts to defendant, no matter what his defense may be, and where he pleads self-defense, it is sufficient to acquit him if his evidence on self-defense, together with all other evidence in the case, creates a reasonable doubt of guilt. (*People v. Williams*, 56 Ill.App.2d 159.) Also, one who is deliberately assaulted in a manner to make him reasonably apprehensive that his life may be taken or that he may suffer great bodily harm has the right, in self-defense, to deliberately kill his assailant. (*People v. Taylor*, 3 Ill.App.3d 734.) However, it is also an accepted rule that the issue of self-defense is one of fact to be determined by the trier of the fact, and once a verdict on that issue has been rendered such

verdict will not be disturbed on review unless the evidence is palpably contrary to the verdict, or so unreasonable, improbable, or so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Jordan*, 18 Ill.2d 489.

■■ Based on the facts before us, it is the improbability of defendant's story that is so apparent and not the insufficiency of support for the verdict. According to defendant, it was he who was set upon by a large number of people. He claims he was thrown to the ground, was choked, kicked and beaten, and not until he finally took his knife from his pocket, opened it, and began striking out wildly to protect himself, did they all get up and leave him alone. In the face of this testimony is the fact that only one person got hurt and he died with seven separate stab wounds in his body. Apparently no one else was injured, not by the knife and not even by the swinging jack handle wielded by defendant's brother, although he testified that on two occasions he got five or six and then three or four attackers off defendant. The jury is under no obligation to accept this testimony as true merely for its telling. The jury's duty is to weigh all the evidence in the light of the surrounding circumstances, giving consideration to the probabilities and improbabilities raised thereby, and then to reach a verdict based on the credibility it attaches to the various witnesses. We believe that the verdict here, finding that defendant did not act in self-defense, is more than amply supported by substantial evidence and we shall not disturb it.

Next, citing *People v. Cole*, 30 Ill.2d 375, defendant contends that reversible error occurred when the State wrongfully withheld certain evidence from him which should have been made available during the trial. The principle stems from the case of *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed.2d 215, 83 S.Ct. 1194, wherein it was held that, "The suppression by the prosecution of evidence favorable to an accused *upon request* violates due process where the evidence is *material* either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (Emphasis supplied.) 373 U.S. at 87.

■■ The only information we have relative to the evidence allegedly withheld is a statement by counsel in his brief and in his attached affidavit that the State possessed pictures of the decedent "showing the arm of the deceased being cut in a manner which was either accidental or caused by the warding off of a blow thrown by the deceased which was clearly the cause of death." Apparently counsel had seen the pictures in an in-camera session during the trial but he made no request for them at that time, nor did he file a general discovery motion asking for evidence favorable to defendant. Under similar facts we have held that in the absence of a request by defendant the State is not obligated to dis-

close evidence favorable to the defense. (*People v. Howze*, 7 Ill.App.3d 60.) In any event, apart from the conclusionary statement of counsel, there is no showing that the pictures contained anything material relative to the guilt or punishment of defendant and materiality is a further condition of the obligation to disclose. Counsel claims that the pictures would show that decedent's arm was cut in a manner which was either accidental or caused by warding off a blow thrown by decedent, and also, that this cut, and presumably no one of the other stab wounds, was clearly the cause of death. This is pure speculation and we cannot hold it to be a showing of materiality. In addition, it is well settled that a reviewing court will not consider matters not of record and which appear for the first time in defendant's brief on appeal. *People v. Anthony*, 28 Ill.2d 65.

For the reasons stated the judgment of the Circuit Court of Madison County is affirmed.

Affirmed.

EBERSPACHER and CARTER, JJ., concur.