THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN TERRANOVA *et al.*, Defendants-Appellants.

First District (5th Division)   No. 76-1083

Opinion filed May 20, 1977.

Julius Lucius Echeles and Frederick F. Cohn, both of Chicago for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, and Richard J. Barr, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendants were each convicted of the offense of aggravated battery and sentenced to serve five years probation conditioned upon serving a one-year term of periodic imprisonment. They contend it was error to exclude evidence on the bias of the State's witnesses, to admit evidence of other offenses, and to impose conditions of one year periodic imprisonment upon their sentences.

The following pertinent evidence was adduced at trial.

### For the State

#### Henry Pascual

On January 24, 1974, at approximately 6:51 p.m. he was standing at the southeast corner of Palmer Street and Drake Avenue and his friend, Gregory Buenfil, was standing near the southwest corner. Although it was nighttime, the intersection was well lighted by the city street lights and a tavern sign. A blue 1966 Chevrolet, with defendant Steven Hanley as the driver and another man in dark clothes as the passenger, approached from the east travelling west on Palmer Street. Hanley was wearing a tan hat. The automobile turned south on Drake and stopped approximately 30 feet from the intersection and 14 feet from where he was standing. Three shots were fired from the car and one of these was in his direction.

He did not see if Hanley or the passenger fired the shots. After the car left, he saw George Von Liski lying on the ground and carried Von Liski to the sidewalk. When the police arrived he told them that defendants had shot Von Liski.

On cross-examination he admitted his brother Victor was arrested and incarcerated for assaulting Hanley's brother Ricky. The State objected to a question concerning whether Pascual had been in court during his brother's assault trial. Defendant's counsel offered to prove the existence of a vendetta between the State's witnesses and defendants. However, before the trial court ruled on the motion defense counsel stated " * * * we will proceed and I will stay away from this aspect of it until later in my cross examination."

He admitted that he saw the car for less than one minute and that he ducked when the first shot was fired at him. Hanley wanted to shoot him because Hanley's brother had been hurt. His own brother Victor had gone to jail as a result of that incident. Buenfil told him Terranova's name before the police arrived.

*Gregory Buenfil*

He was standing on the southwest corner of the intersection which was well lighted by the street lights and by a grocery store's and a tavern's signs. He recognized Hanley, whom he had known approximately five months, as the driver of the automobile. He identified Hanley's tan hat. Terranova, whom he had known approximately one year, was a passenger in the car. Terranova was wearing sunglasses and dark clothing. When the car stopped, Terranova stuck his right arm out the front seat passenger's window, bent it around the car's front windshield, and fired a shot in the direction of the southeast corner of the intersection. Terranova then straightened his arm and fired two more shots at Buenfil. He did not see Pascual until after the shooting.

On cross-examination, the State's objection to defendants' question "In fact you shot him [Hanley] in the leg, didn't you, and pleaded guilty, didn't you?"—was sustained. However, he later admitted that he was committed by the Juvenile Division for shooting Hanley in the knee.

He was not friendly with Hanley or Terranova. He was able to see defendants that evening despite the fact that he was standing 40 feet from the car and that he was not wearing the glasses prescribed for his one bad eye.

*George Von Liski*

As he approached his apartment building's front door at 2156 North Drake on that evening, he was shot from behind through the right leg and creased on the left leg. He did not see who fired the shots. In addition, he substantially corroborated the testimony of the prior State witnesses

concerning the intersection, the lighting conditions and the car's movements.

### Chicago Police Officer George Grzeski

He received a description of the assailant's vehicle and found the vehicle parked in an alley in the 3500 block of West Fullerton Avenue a few blocks from the scene of the shooting. The following colloquy then occurred:

"Q. When you found the vehicle, what, if anything, did you do?

A. We first ran a check to see if the vehicle and the license plates were stolen.

Q. Officer, what was the result of that check?

A. Result came back that the vehicle and the license plates were indeed stolen.

Q. Officer, what, if anything, did you do at that point?

[DEFENSE COUNSEL]: I am going to object to any further examination with reference to the license plate or on the vehicle.

[STATE]: We won't go into it any further."

On the front seat of the vehicle was a tan, wide-brimmed hat. When he gave the hat to officer Manshreck in the tactical interrogation room, Hanley claimed the hat.

### Chicago Police Officer Louis Ferraro

He responded to a radio call identifying defendants as the assailants. Because he knew both defendants, he and his partner, Officer Manshreck, proceeded directly to Hanley's home at 2454 North St. Louis Avenue. He arrested Hanley in the bathroom and Terranova in a bedroom closet. When he received the tan hat from Officer Grzeski, Hanley claimed it and put it on his head.

On cross-examination, he responded that he received the names of witnesses Pascual and Buenfil in his stolen auto report from the witnesses themselves.


### · For defendants

#### Defendant Steven Hanley on his own behalf

He was driving Terranova home in the 1966 Chevrolet at the time of the shooting. He admitted owning the tan hat. When they arrived at the intersection of Palmer and Drake he told Terranova to lock his door because they were in the neighborhood of the Imperial Gangsters. The intersection was not well lighted. As they were crossing Palmer a car pulled in front of them and he stopped his car. He put the car in reverse and heard a shot. He drove to Central Park Avenue and abandoned the car in an alley because they were being chased.

He used to be a member of the Vice Lords gang. Buenfil shot him in the

knee during that same winter. He had also been shot in the back of the head and his brother Ricky's jaw had been broken by a lead pipe during a fight with the Imperial Gangsters.

*Defendant John Terranova on his own behalf*

He substantially corroborated Hanley's account of the incident. In addition, he denied having or firing a gun. He did not notify the police that he had been shot at. He was nervous and hid in the closet at Hanley's house because he was frightened by the policemen's guns. After Hanley testified against Victor Pascual, Terranova's friendship with Buenfil diminished.

After defendants were found guilty, a hearing in aggravation and mitigation was held. Officer William Hanhardt of the Chicago Police Department testified that Hanley was a counselor in his District's youth program and that Terranova's involvement with the gang was minimal. In his opinion, both defendants were of immeasurable value to society and nothing would be gained by sending them to jail. In addition, several witnesses testified that Terranova was a nice young man who helped his father on his fishing boat.

OPINION

The State contends defendants' failure to make a motion for new trial waives their contentions on review citing *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856, and *People v. Irwin* (1965), 32 Ill. 2d 441, 207 N.E.2d 76. In those cases, following jury trials defendants failed to specify in their written post-trial motions the errors they argued on appeal. The Supreme Court held that this failure constituted a waiver of the issue on review. However, the court has also held that a post-trial motion is not necessary in a bench trial to preserve the issue of the sufficiency of the evidence for review. (*People v. Hoffman* (1942), 381 Ill. 460, 45 N.E.2d 874.) This court's Third District has held that a post-trial motion is not necessary to preserve error in a bench trial when the error has been brought to the attention of the trial court by motion or by timely objection, thus, giving the trial court the opportunity to correct the error involved. *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.

■■■ Moreover, defects affecting a substantial right may be noticed under Supreme Court Rule 615(a) even though they were not brought to the attention of the trial court whenever the evidence of guilt is closely balanced. (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a); *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Bradley* (1964), 30 Ill. 2d 597, 198 N.E.2d 809.) In the instant case, the alleged errors could have affected defendants' substantial constitutional rights to fair trials because they bore directly upon the credibility of the State's identification witnesses. In a case where the testimony of two witnesses identifying

defendants and their automobile must be weighed against the testimony of the two defendants denying their complicity, we believe that the general waiver rule must be relaxed and the alleged defects examined to determine if any prejudicial error, in fact, occurred.

■■ *Defendants contend it was error to exclude evidence of the bias of* the State's witnesses. They argue that the trial court erroneously refused to allow cross-examination of Gregory Buenfil as to whether he had shot defendant Hanley on a previous occasion. However, following the court's initial ruling, this exact evidence was later admitted on two separate occasions. In the first, Buenfil admitted that the Juvenile Division of the circuit court found that he had shot Hanley in the knee one week after this occurrence. In the second, defendant Hanley testified that Buenfil shot him in the knee during the winter of 1974. Even if the court's initial ruling was erroneous, the subsequent admission of improperly excluded evidence cured the prejudicial effect that may have been suffered. *People v. Armstrong* (1967), 80 Ill. App. 2d 77, 224 N.E.2d 675.

■■ ■ Defendants next argue the trial court improperly excluded certain cross-examination of Henry Pascual concerning the incarceration of his brother, Victor, for assaulting defendant Hanley's brother, Ricky. Although the trial court never sustained the State's objection and, therefore, defendants could have pursued this line of inquiry, we need not dispose of defendants' argument on that basis. Prior to the State's objection Pascual testified that his brother had been incarcerated for assaulting Ricky Hanley. Defendant Hanley later testified that Pascual and his gang had severely beaten his brother. Defendant Terranova also testified about this incident. Consequently, it is clear that any possible bias was presented to the trial court and therefore no prejudicial error occurred.

■■ Defendants also argue it was error to exclude extrinsic evidence in the form of defendant Hanley's direct testimony about a statement by Buenfil which would have shown Buenfil's bias against the defendants. A proper foundation must be laid for subsequent impeachment for bias. (*People v. Curtis* (1970), 123 Ill. App. 2d 384, 259 N.E.2d 397; *People v. Payton* (1966), 72 Ill. App. 2d 240, 218 N.E.2d 518.) In the instant case, defendants never questioned Buenfil about this alleged statement. Consequently, the subsequent examination of Hanley was improper because Buenfil had not been given the opportunity to admit or to deny making the statement.

Moreover, defendants did not tender an offer of proof to show the substance of the excluded testimony. (*People v. Bridgeforth* (1972), 51 Ill. 2d 52, 281 N.E.2d 617, *appeal dismissed* 409 U.S. 811, 34 L. Ed. 2d 66, 93 S. Ct. 100, and 409 U.S. 811, 34 L. Ed. 2d 66, 93 S. Ct. 190; *People v. Warren* (1975), 32 Ill. App. 3d 218, 336 N.E.2d 557.) As a result, it is

impossible for us now to tell whether the statement, if any, was admissible.

■■ Defendants next contend it was error to admit accusations of other offenses, specifically that their automobile was a stolen vehicle. In light of defendants' failure to make a proper and timely objection to this evidence and the presumption that the judge in a bench trial considers only relevant evidence, we reject defendants' second contention. *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166; *People v. Grodkiewicz* (1959), 16 Ill. 2d 192, 157 N.E.2d 16.

Defendants finally contend it was error to impose conditions of one year periodic imprisonment upon their five-year probation sentences. Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(b)(4)) allows us to reduce the punishment imposed by a trial court, but generally we will refrain from modifying the sentence of a trial judge who was able to observe the defendants and assess the factors in aggravation and mitigation unless a clear abuse of his discretionary powers can be shown. *People v. Morgan* (1974), 59 Ill. 2d 276, 319 N.E.2d 764.

■■ Here, defendants were each convicted of aggravated battery after the trial court found they caused great bodily harm to George Von Liski while using a deadly weapon. Aggravated battery is a Class 3 felony subject to an indeterminate sentence of imprisonment with a maximum in excess of one year, but not exceeding ten years. (Ill. Rev. Stat. 1975, ch. 38, pars. 12—4(d), 1005—8—1(b)(4).) Nonetheless, the trial judge chose to sentence defendants only to a period of probation with the condition of a one-year term of periodic imprisonment. When we consider the serious nature of an offense committed with a gun on a public street as well as the mitigating testimony presented in defendants' behalves, we cannot hold that the trial court abused its discretionary powers.

Affirmed.

MEJDA and WILSON, JJ., concur.