THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEE MORRIS, Defendant-Appellant.

First District (1st Division)   No. 62620

Opinion filed May 23, 1977.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Renee G. Goldfarb, and John E. Horn, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUA delivered the opinion of the court:

Following a jury trial in the Circuit Court of Cook County, defendant Lee Morris was convicted of the charge of attempt murder and sentenced to serve a term of six to 18 years in the penitentiary. Defendant appeals contending that the State failed to prove him accountable for the conduct of his co-indictee.

Miss Judy Lloyd testified that at approximately 1 a.m. on September 28, 1973, Roy Cressler was escorting her home from a party the couple had attended at a home near 108th Street and Edbrooke Avenue in Chicago. As they walked east on 112th Street they observed three male Negroes standing on the southwest corner of 112th and Indiana. As the couple passed the trio, one of the men, whom Miss Lloyd could not identify, asked Mr. Cressler for a "joint." According to Miss Lloyd, Cressler responded that he was not smoking marijuana but rather an ordinary tobacco cigarette. At this time one of the men put a hand in front of Miss Lloyd and touched her. According to her testimony, both Miss Lloyd and Cressler told the men to leave her alone. They continued walking and noticed that two of the three men were following them, keeping about

five feet behind them. Because they were scared, the couple quickened their pace. As they did so, the defendant went up to Mr. Cressler, spun him around, and started punching him. Miss Lloyd said that as she observed this, Kalvin McDowell, the second man who had come up from behind, grabbed her, punched her in the face and knocked her down. As she struggled to get back up, McDowell knocked her down again. Trying once more to stand up, McDowell stabbed her twice, once in the abdomen and once in the right arm, and slashed her across the face. At this time, the defendant took her purse and he and McDowell fled.

Despite her wounds, Miss Lloyd went over to the grass where Mr. Cressler was lying face up. She told him to get up but he did not respond. She began to scream and ran towards a squad car which had just arrived at the scene in response to a call. Miss Lloyd further testified that the area was well lighted at the time of the incident; that she got a good look at McDowell's face as he knocked her down and stabbed her and that the defendant was wearing a dark top and blood soaked light brown pants when he took her purse.

Chicago Police Officers Baranski and Creighton testified that as they arrived on the scene, within 30 seconds after receiving the call, they saw Miss Lloyd, whose blouse was covered in blood, running towards their car. After relating what happened, Miss Lloyd was put into the car by Creighton while Baranski went to help Cressler. According to Baranski, Cressler was still alive, though his body was covered in blood. They called for an ambulance and proceeded to take Miss Lloyd to the hospital.

Meanwhile, Officers Dore and McCarthy, en route to the scene of the crime, saw the defendant and McDowell running west on 112th Street. The officers curbed their squadrol and asked the defendant and McDowell if they had heard a woman screaming. Alighting from the car, Officer Dore observed the defendant drop a handkerchief to the ground with his left hand. Dore retrieved the bloodstained handkerchief which contained a black handled knife, completely covered in blood. Dore also testified that the defendant was wearing a dark jacket, and bloodstained light beige pants. As the officers were speaking to the defendant and McDowell, Officer Baranski, en route to the hospital with Miss Lloyd, passed them. Miss Lloyd asked Baranski to stop, whereupon she identified the defendant and McDowell as the pair who had just attacked her and her companion.

Subsequently, while at Area 2 headquarters, the defendant, after being advised of his rights, made a statement in the presence of homicide investigators Cole and Downey. The defendant stated that he had been with McDowell and a man known as "Tweet," that they argued with three or four extremely large white males, and that, in order to defend himself, he took his knife and "Man, I just started cutting." Later that morning, the

defendant made a written statement, this time in the presence of Officer Cole, a court reporter, and Assistant State's Attorney Joseph Kurland. Defendant stated that McDowell had come to defendant's house, given him the knife and the two of them had gone to several lounges, and met Tweet. The three were walking from Tweet's house to a bus stop when they noticed three white people, one female and two males, coming towards them. The defendant stated that he was walking ahead of the group when an argument ensued, that he tried to intervene, but by the time he got there McDowell had stabbed Cressler and Miss Lloyd. He grabbed McDowell and the two of them were walking back to 112th Street when the police stopped them, found the knife on the sidewalk, took them back to the scene, and arrested them following Miss Lloyd's identification. Defendant signed this statement.

Subsequently, the defendant and McDowell were indicted for murder, aggravated battery, and attempt murder. The defendant's case was severed and tried to a jury. At the trial, the defendant testified that on the night of September 27, 1973, he and McDowell visited several lounges, met Tweet, and returned to Tweet's house. Tweet went inside and, upon returning, remained on the sidewalk with McDowell. Meanwhile, the defendant testified that he withdrew from the group and walked to 112th and Indiana to catch a cab. He said a white couple passed him and approached Tweet and McDowell. According to the defendant, who claimed to be 60 or 70 feet away at the time, McDowell was arguing with the white girl. He said that he heard the girl repeatedly screaming "I'm not going to give you black niggers anything, you shouldn't be living around here in the first place, ought to burn your house down." He then saw Miss Lloyd hit the ground with McDowell, and saw Cressler fighting Tweet. The defendant claimed that he yelled to his friends "to come on" and "it was nothing." They did not respond and he walked back to them. At this time he tried to separate McDowell and the girl but could not do so. He then separated Tweet and Cressler, but when he realized they would not stop fighting he left. He stated that he noticed no blood on Cressler, no knives, and that he was never in possession of a knife that night. Furthermore, while he noticed that the girl had been stabbed and was bleeding from the chest, he never saw Cressler stabbed nor hit the ground. When stopped by the police, the defendant said he was walking alone at a normal pace, that he told the police McDowell was still "back there," and that McDowell then caught up to them. At this time, he saw the officer picking the knife up. He said he did not know how it got there. He also claimed he was beaten by the arresting officers, and later, that he was beaten again by various officers at the station house. He admitted making and signing the statement as hereinbefore described, but denied making the first statement to Officer Cole. He also admitted that he had

been advised of his rights, treated fairly, and that a photograph taken of him immediately after he signed his statement truly depicted him.

Thereinafter the jury returned a verdict of guilty of the attempt murder and aggravated battery of Miss Lloyd, and not guilty of voluntary manslaughter of Cressler. The jury was unable to reach a verdict on the murder charge and was subsequently discharged, the court declaring a mistrial as to that charge. Judgment was entered on all verdicts, vacated as to the aggravated battery conviction, and, following denial of defendant's motions for a new trial and in arrest of judgment, the court sentenced defendant as aforesaid.

The issue presented for review is whether the State proved the defendant accountable for the conduct of Kalvin McDowell.

The defendant urges reversal on the theory that the jury's inability to convict him of the murder of Roy Cressler vitiates their finding that he participated in the assault as Miss Lloyd so testified. We do not agree.

■■■ Under the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 5—2(c)), a person is legally accountable for the conduct of another when, "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." If the defendant had a common design to do an unlawful act, then whatever act either of them did in furtherance of the common design was the act of both. (*People v. Armstrong* (1968), 41 Ill. 2d 390, 243 N.E.2d 825.) Proof of common design need not be supported by words of agreement but can be drawn from the circumstances surrounding the commission of the act (*People v. Richardson* (1965), 32 Ill. 2d 472, 207 N.E.2d 478), and proof that a person was present at the commission of a crime without disapproving or opposing it may be considered with other circumstances (*People v. Hill* (1968), 39 Ill. 2d 125, 233 N.E.2d 367). Likewise while presence at the scene of a crime and flight therefrom do not *prima facie* establish accountability absent other circumstances indicating a common design, they are nevertheless circumstantial evidence which may tend to prove and establish defendant's guilt. *People v. Smith* (1970), 127 Ill. App. 2d 199, 262 N.E.2d 165. See also *People v. Jones* (1973), 12 Ill. App. 3d 643, 299 N.E.2d 77.

■■ In light of all the testimony of the witnesses, the evidence as to the defendant's presence at the scene of the crime, his subsequent flight therefrom after taking the victim's purse, and his conflicting accounts of the incident, we believe the evidence was sufficient for the jury to conclude that the defendant participated in a common design with McDowell to do unlawful acts. It is well settled that the credibility of witnesses and the weight of evidence are questions best determined by the jurors, and we will not disturb a verdict of guilty on the ground that

the evidence is not sufficient to convict unless it is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of the defendant's guilt. *People v. Woodruff* (1956), 9 Ill. 2d 429, 137 N.E.2d 809.

Finally, defendant alludes to the apparent incongruity between the jury's verdict of guilty of attempt murder and their inability to reach a verdict as to murder. While not arguing this issue directly, the defendant infers that the jury's verdict on the attempt murder cannot stand because it is illogical and/or inconsistent with respect to their decision as to the murder charge. Since the rule in Illinois is that neither logical nor legal consistency in verdicts is necessary, we need not address ourselves to the merits of this issue. See *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755.

Accordingly, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.