THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NEDELJKO TODOROVIC, Defendant-Appellant.

First District (2nd Division)    No. 76-532

Opinion filed September 6, 1977.

Philip M. Basvic, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago, for the People.

Mr. JUSTICE PUSATERI delivered the opinion of the court:

The defendant, Nedeljko Todorovic was charged by indictment with the offenses of attempt murder in violation of section 8—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—4), aggravated battery causing great bodily harm in violation of section 12—4 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—4), and aggravated battery using a deadly weapon in violation of section 12—4(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 12—4(b)(1)). Upon a jury trial, the defendant was found not guilty of attempt murder and guilty of both counts of aggravated battery, and judgments were entered on the verdicts. He was sentenced to serve three years felony probation, the first year to be served in the Work Release Program, with one weekend off each month.

From the entry of judgments of conviction, defendant appeals, contending (1) that the prosecutor's opening statement and closing argument were so prejudicial as to deprive him of his constitutional right to a fair and impartial trial; (2) that his acquittal of the attempt murder offense was an acquittal of the lesser included offenses of aggravated battery; (3) that he was not proven guilty beyond a reasonable doubt; and (4) that his sentence is excessive.

A review of the evidence adduced at the trial reveals that on January 13, 1974, at approximately 5 a.m., the defendant, his wife Maria, and their friend, Nada Cabitanini, were parked in his car in a southerly direction on Ridgeway Avenue immediately north of its intersection with 26th Street, in the City of Chicago. They had just left a restaurant in the vicinity, after having celebrated the Serbian New Year, and were waiting for defendant's car to warm up.

Complainant, Michael Ceja, his wife Alice, and their daughter were in an automobile that was stopped behind defendant's car. Ceja and his wife testified that defendant's car was in the middle of the street, and thus blocking their path of travel. Defendant and his wife testified that he was parked next to the curb, while their friend, Ms. Cabitanini, testified on cross-examination that defendant's car could not possibly be right next to the sidewalk, as a snow pile was in the way.

Ceja sounded his horn several times, got out of his car, and approached

the driver's door of defendant's car. Ceja testified that he knocked on the door window, and defendant opened the door to arm's length. He asked defendant whether he had a problem with his car and requested its removal. Defendant voiced an obscenity and slammed the door shut.

Ceja testified that he then turned, went a step or two towards his car, heard his wife say "watch out, Mike," turned around, heard a door open, saw a gun pointed at him, saw defendant pull the chamber back and fire at him. He was shot and hit the ground, and he saw the defendant drive rapidly from the scene.

Officer Guerrero arrived promptly at the scene. He saw a hole and bloodstains a few inches below Ceja's belt on the left side of his body. He gave a flash message over the radio, and had Ceja removed to Mt. Sinai Hospital.

Officer Curtin and his partner responded to the flash message. Officer Curtin testified that he noticed a suspect vehicle at Sacramento and Roosevelt, got behind this vehicle, and activated his Mars light. The vehicle picked up speed, and Officer Curtin turned on his siren. He curbed the vehicle after a four block pursuit.

The defendant exited from the automobile, and was told to remove his hands from his coat pockets, and did so upon a second command. Officer Curtin informed defendant that he was stopped because his car fit the description of one wanted in a shooting. Defendant replied that he had fired two shots "over there," and nodded his head in a westerly direction. He told Officer Curtin the gun was in his car. Officer Curtin then arrested defendant, handcuffed him, advised him of his rights, and placed him in the squadrol. He recovered a .25 caliber semi-automatic handgun and its clip with five live rounds from the front seat area of defendant's car.

On cross-examination, Officer Curtin testified that defendant later told him at the police station that he thought he had fired into the ground and was afraid he was going to be robbed. Officer Curtin also stated that an average automatic will hold seven rounds in the clip.

Detective Michael Murphy of the Chicago Police Department testified that defendant told him at the police station that a car approached his car while he was in the center of the street, sounded its horn, its driver approached defendant, a conversation ensued, he became fearful and fired one or two shots at that individual. Detective Murphy also stated that Alice Ceja identified the defendant in a lineup. On cross-examination, Detective Murphy stated that defendant told him he fired toward the ground to scare the man away.

Dr. George Greenfield, Chief of the Radiology Department at Mt. Sinai Hospital, testified the X rays showed that the bullet lodged in the soft tissues of Ceja's hip.

The defendant testified that a man opened his door, yelled at him to

"Come on. Get, move." He asked the man where he should move to, and the man pulled him by the left shoulder, saying "Get out." Defendant looked over to his wife and Ms. Cabitanini and said in Serbian "What I going to do?" and they screamed "Don't go out." He stated the man then loudly said "Come on. Get out. Don't talk with the f_____ broads," and grabbed him by the neck with his other hand and tried to pull him out of his car. Defendant reached for his loaded gun, cocked it, and fired two shots towards the ground. He stated that he did not aim the gun at the man.

The defendant further testified that he stopped for the police soon after seeing blue lights; he alighted, and did not have his hands in his pockets. He told the police he fired two shots but didn't shoot a man, and that he shot into the ground. He testified that he tried to scare the man away by shooting; that he never pointed the gun directly at the man, nor did he intend to shoot him. He stated that he was scared, afraid of being injured, and thought he was going to be robbed. On cross-examination, the defendant acknowledged that he did not see a gun or other weapon in the man's hands, and that the victim never said he was going to harm him or anyone in his car.

Defendant initially contends that the opening statement of the prosecution was so prejudicial that it prevented defendant from receiving a fair and impartial trial. Specifically, he asserts that the prosecutor had no right to repeat the indictment, and that the prosecutor misled the jury by having the jury believe the defendant had in fact committed the offense of attempt murder, whereas he should have told the jury that defendant was *charged* with the offense of attempt murder.

At the trial, after first stating to the jury that "anything I say or anything counsel may say is really not evidence," the assistant State's Attorney continued his opening statement as follows:

"You recall when we first started picking you yesterday the Judge read the indictment to you and I want to go back over that. The Judge told you in May, 1974, the Grand Jury returned an indictment charging Mr. Todorovic with the offense of aggravated battery, in that he intentionally and knowingly without legal justification caused a battery upon Michael Ceja which caused great bodily harm to the said Michael Ceja in violation of Chapter 38, Section 34 of the Amended Illinois Revised Statutes. The Grand Jury returned an indictment which alleged he committed aggravated battery on Michael Ceja with a deadly weapon, in violation of Chapter 38, Section 12—4, Sub-Section (b)(1).

Finally, on January 13, 1974, Mr. Todorovic committed the offense of attempt, in that he, with the intent to commit the offense of murder, intentionally and knowingly attempted to kill Michael

Ceja by shooting him with a gun without lawful justification. All of these are contrary to the statutes and against the peace and dignity of the same People of the State of Illinois."

The defendant contends that the assistant State's Attorney "misconstrued" the indictment by having the jury believe that the defendant had committed the offense of attempt murder rather than that the defendant was charged with the offense of attempt murder. We do not find this to be the case. Before reading the two counts of aggravated battery to the jury, the assistant State's Attorney informed them, "* * * the Grand Jury returned an indictment *charging* * * *" and "* * * the Grand Jury returned an indictment which *alleged* * * *" (emphasis added). He continued by reading the count charging the defendant with attempt murder. (See *Cooke v. People* (1907), 231 Ill. 9, 82 N.E. 863, where the court held it was not error to read the bill of particulars to the jury.) It had already been made clear to the jury that the offenses named in the indictment were the offenses with which the defendant was charged. In the unlikely event that the jury was misled by the assistant State's Attorney's failure to repeat the word "charged" or "alleged" when reading the attempt murder count of the indictment, that misapprehension was cured when the jury was instructed as to the law. Illinois Pattern Jury Instructions, Criminal No. 2.02 (1968) (hereinafter referred to as IPI Criminal), charged the jurors as follows:

"The indictment in this case is the formal method of accusing the defendant of a crime and placing him on trial. It is not any evidence against the defendant and does not create any inference of guilt."

Also included in the instructions given to the jury was IPI Criminal No. 1.03 which charges:

"* * * Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded."

In addition, IPI Criminal No. 1.03 has been held to cure prejudice resulting from an improper argument. *People v. Arnold* (1st Dist. 1973), 12 Ill. App. 3d 826, 831-32, 299 N.E.2d 446.

■■ At no time during the entire opening statement did defense counsel object to any of the assistant State's Attorney's comments. Any assignment of error is waived by his failure to object. (*People v. Smith* (1962), 25 Ill. 2d 219, 225, 184 N.E.2d 841.) It is well settled in Illinois that the failure of a defendant to raise an issue in his written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal upon review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) Although the waiver rule may be relaxed when the evidence

is closely balanced, if the evidence of the defendant's guilt is strong, then no relaxation of the rule is warranted. *People v. Pickett*, at 283.

■■■ We conclude that a review of the full record discloses that no error was committed regarding the People's opening statement, that in any event the defendant waived any error that may have been committed, and that the jury's acquittal of the defendant on the charge of attempt murder established that they understood that the indictment did not create an inference of guilt, and that the defendant suffered no prejudice.

The defendant next asserts the prejudicial impropriety of certain remarks made by the prosecutor in his closing argument. Specifically, the defendant cites two instances of an allegedly improper closing argument, which he contends deprived him of a fair and impartial jury trial. The defendant first cites the remarks of the assistant State's Attorney, informing the jury that, if convicted, defendant would not necessarily be sent to jail. However, we feel a complete recitation of what transpired at the trial in this regard must begin with the closing argument of the defense counsel, which was as follows:

> "And I again thank you for your attention and the time and energies that you have expended in doing your civic duty, and I again respectfully say that you can't guess somebody to jail—"

The assistant State's Attorney responded:

> "We're suggesting at this time when you go back in there, don't consider sympathy and prejudice. I think that a good example of what I mean by that is my counsel's very last comment to you— You cannot guess a man to jail.
>
> Ladies and gentlemen, all of you sitting there, do you want to send this man to jail?
>
> You know, ladies and gentlemen, that man doesn't have to go to jail. If he's convicted, he doesn't have to go to jail. That man over there, the Judge, is the—
>
> MR. BERKOS: Objection.
>
> MR. HOFFENBERG: —sentencing person in this courtroom.
>
> MR. BERKOS: I'm objecting.
>
> MR. HOFFENBERG: Judge, he indicated they can't guess a man to jail. He doesn't have to go to jail.
>
> THE COURT: The court will instruct the jury as to the law."

■■ The defendant argues that the error here was not cured because the court did not sustain defense counsel's objection and instruct the jury to disregard that portion of the argument. The trial court did, however, inform the jury that it would instruct as to the law. Defense counsel did not request a ruling on his objection. The failure of a trial court to rule on

objections to evidence is not open to review at the instance of one who failed to request a ruling when the court did not make one (*People v. Weiss* (1937), 367 Ill. 580, 12 N.E.2d 652), and this same rule properly applies to objections to arguments. In addition, in *People v. Pieper* (1951), 410 Ill. 15, 101 N.E.2d 109, the assistant State's Attorney, after remarking that the defendant's counsel had talked about the penitentiary, stated that a verdict of guilty did not necessarily mean that the defendant would be sent to the penitentiary. As in the instant case, the assistant State's Attorney told the jury that it was a matter for the court to decide. The Supreme Court of Illinois ruled that the argument did not constitute prejudicial error. *People v. Pieper*, at 21.

■■ Even assuming, *arguendo*, that the remarks of the assistant State's Attorney were prejudicial and not cured, reversal is not required since proof of the defendant's guilt was so established that the jury's verdict would not have been other than it was, even without the comments of the assistant State's Attorney. *People v. Coleman* (1st Dist. 1977), 51 Ill. App. 3d 499, 366 N.E.2d 1026; *People v. Dumas* (4th Dist. 1977), 49 Ill. App. 3d 756, 762, 364 N.E.2d 616; *People v. Smith* (1st Dist. 1972), 6 Ill. App. 3d 259, 263, 285 N.E.2d 460.

As his second assignment of an improper closing argument, the defendant alleges impropriety in the following statement of the assistant State's Attorney:

> "Ladies and gentlemen, if I took a gun and I walked into a crowd in the middle of the Civic Center plaza this afternoon, and I take the gun and point this gun into the crowd and, gee, I hope I don't kill anybody and I shoot it and somebody gets killed, are you going to sit here and tell me that's not murder? You know better than that. You know better than that.
>
> What happens when you take a gun and even if you took the gun and pointed it down, do you think it might hit someone? Do you think there is a possibility that someone might get shot?
>
> Even if you wanted to believe what he said, that he didn't intend that someone would get shot, because what he did created a strong possibility that someone would get shot. He intended that gun to be fired. He intended that person be hit with that weapon, and that's exactly what happened. And it didn't happen as he said, that it ricocheted; it happened straight on."

Defense counsel made no objection to the argument at that time, and it has been held that failure to make proper and timely objection constitutes a waiver of the right to object. *People v. Dukett* (1974), 56 Ill. 2d 432, 442, 308 N.E.2d 590, *cert. denied* (1974), 419 U.S. 965, 42 L. Ed. 2d 180, 95 S. Ct. 226; *People v. Skorusa* (1973), 55 Ill. 2d 577, 585, 304 N.E.2d 630.

The assistant State's Attorney further argued:

"If you want to find the defendant not guilty with the unimpeached testimony of Michael Ceja, the testimony of Alice Ceja, the x-rays, the expert opinion of Dr. Greenfield, the impeachment of the defendant, the officers' testimony about the chase, the defendant's absurd testimony about the weapon being fired and the bullet, his being attacked—If you want to find the defendant not guilty, then my suggestion is you might as well fire the judge.

You might as well fire Mike and myself. You might as well fire the court reporter. Give him back his gun. Let him go back on the street, but don't let him beat you—

MR. BERKOS: Objection.

THE COURT: This is argument.

MR. HOFFENBERG: —back to your car."

We conclude that the court properly responded, "This is argument." In *People v. Anderson* (1971), 48 Ill. 2d 488, 272 N.E.2d 18, the assistant State's Attorney, in closing argument, remarked that the jury must decide whether the defendant was to be punished for his crime or turned loose on the streets. The court stated:

"* * * it is proper for the prosecutor to reflect unfavorably on the accused and to dwell unfavorably on the evil results of crime and to urge a fearless administration of the law." *People v. Anderson* (1971), 48 Ill. 2d 488, 497.

Defendant cites the case of *People v. Cepek* (1934), 357 Ill. 560, 192 N.E. 573, in support of his contention of prejudicial argument. However, in *Cepek*, the prosecutor injected his personal opinion of the defendant's guilt by telling the jury that the defendant would not have been prosecuted unless the State's Attorney's office thought he was guilty.

■■ In the case at bar, the assistant State's Attorney gave no personal opinion of defendant's guilt. He commented on the evidence and made an argument based on the inferences properly emanating from that evidence. The jury was admonished that anything said in closing argument was not evidence. We conclude that the defendant was not unduly prejudiced.

The defendant next contends that the jury verdict of not guilty of the offense of attempt murder was an acquittal of the lesser included offense of aggravated battery, asserting that all of the elements of the lesser charge are included in the more serious charge of attempt murder. The People respond that the verdicts are neither legally nor logically inconsistent. Moreover, this court has held on the authority of *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61 "* * * neither legal nor logical consistency of verdicts is now required in Illinois." (*People v. Murray* (1st

Dist. 1975), 34 Ill. App. 3d 521, 537, 340 N.E.2d 186. See *People v. Rudolph* (1st Dist. 1977), 50 Ill. App. 3d 559, 365 N.E.2d 930; *People v. Morris* (1st Dist. 1977), 49 Ill. App. 3d 369, 364 N.E.2d 377.) In *People v. Hairston* (1970), 46 Ill. 2d 348, 362, 263 N.E.2d 840, *cert. denied* (1971), 402 U.S. 972, 29 L. Ed. 2d 136, 91 S. Ct. 1658, our Supreme Court adopted the view that:

" 'In law there is no [legal] inconsistency in verdicts of acquittal and conviction upon charges of crimes composed of different elements, but arising out of the same state of facts.' "

In the case at bar, the defendant was indicted for attempt murder and aggravated battery. To convict the defendant of aggravated battery, it was necessary to prove that the defendant intentionally and knowingly caused great bodily harm or committed a battery using a deadly weapon. (Ill. Rev. Stat. 1973, ch. 38, par. 12—4.) To establish the defendant's guilt of the crime of attempt murder, it was necessary to prove the additional element of a specific intent to commit murder. (Ill. Rev. Stat. 1973, ch. 38, par. 8—4.) Since proof of attempt murder requires proof of a specific intent to kill, an element of the offense which need not be proved in an aggravated battery prosecution, the verdicts are not legally inconsistent. *People v. Malone* (1st Dist. 1976), 37 Ill. App. 3d 185, 190, 345 N.E.2d 801; *People v. White* (1st Dist. 1972), 7 Ill. App. 3d 1084, 1088, 288 N.E.2d 705.

The defendant relies on *People v. Dugas* (1923), 310 Ill. 291, 141 N.E. 769, a case clearly distinguishable from the instant case. In *Dugas*, defendant was convicted of assault with intent to murder. When the complainant subsequently died, before judgment and sentence were entered on the assault charge, the defendant was charged with and acquitted of the complainant's murder. The supreme court found this to be an acquittal of the lesser included offense of assault. However, the court noted:

"It is a general rule of the criminal law that it is sufficient to prove so much of an indictment as shows that the defendant committed a substantive crime therein specified. [Citation.] So where the offense charged in an indictment includes within it another offense of lower degree, the defendant may be convicted of the lower offense even though the evidence fails as to the offense of higher degree. [Citations.]" *People v. Dugas*, at 299.

■■ We conclude that the verdicts of the jury of not guilty of attempt murder and guilty of aggravated battery were neither legally nor logically inconsistent. The two offenses are separate and distinct and require different elements of proof.

The defendant next contends that he was not proven guilty of aggravated battery beyond a reasonable doubt, arguing that his testimony regarding the incident was uncontradicted, and that he was legally

justified in shooting Mr. Ceja. He asserts that his testimony that the victim pulled open the door to the defendant's automobile and started to pull him out, that he never intended to shoot Mr. Ceja, and that he was afraid of being robbed, was unrebutted.

However, a study of the record reaffirms that the defendant's testimony that the victim attempted to pull the defendant from his automobile was contradicted by the victim and his wife; that the defendant's testimony that he never intended to shoot the victim was unconvincing and inconsistent, and that the defendant's testimony that he was afraid of being robbed was contradicted. Detective Frost, who spoke with the defendant at the police station, testified that the defendant never said that a man tried to pull him out of the car or tried to hurt or rob him. Officer Curtin testified that the defendant, at the time of the arrest, did not say that a man tried to pull him out of the car or tried to rob him.

Assuming, *arguendo*, the accuracy of the defendant's testimony, he was nevertheless unjustified in his use of a weapon. Section 7—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 7—1) provides:

> "A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, *he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another*, or the commission of a forcible felony." (Emphasis added.)

The defendant acknowledged that the victim never threatened to rob him, nor said that he was going to harm the defendant or any of the people in his car. The defendant also testified that he never saw a gun or any other weapon in the victim's hands.

The defendant further contends that the complainant did not suffer great bodily harm, that there was no fracture of any bones and that he remained in the hospital only 3½ hours. However, the record discloses that · the victim's hospital stay was short because the bullet was not removed. The victim, Mr. Ceja, testified that he was off his feet for 2½ weeks and away from his employment for 2½ months. At the time of trial, the bullet was still lodged in Mr. Ceja's testicle.

These issues raised by the defendant were questions for the jury to decide. (*People v. Meeks* (1st Dist. 1973), 11 Ill. App. 3d 973, 297 N.E.2d 705, *cert. denied* (1974), 418 U.S. 905, 41 L. Ed. 2d 1153, 94 S. Ct. 3196.) It is the function of the trier of fact to determine the credibility of witnesses and the weight to be afforded their testimony, and to draw inferences from the evidence. A reviewing court should not substitute its judgment

for that of the trier of fact concerning credibility, weight, and inferences unless the evidence is so unsatisfactory, improbable, or implausible as to raise a reasonable doubt of the defendant's guilt. *People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.

■■ We find the jury could properly have found that defendant was not legally justified in shooting Mr. Ceja, and that the complainant suffered great bodily harm. Upon a review of all of the evidence, we find nothing so unsatisfactory, improbable, or implausible as to raise a reasonable doubt as to defendant's guilt.

■■ The record of the case at bar discloses that on the date of sentencing, the trial court stated as follows:

" * * * and the Court is hereby sentencing you, Nedejko Todorovic, to three years felony probation; first year in the Work-Release Program with one weekend off each month to be with his family.

That means that he will be permitted to resume his business that he has, contracting, whatever he is doing, but he will have to pay the penalty to society by being incarcerated at night. You can work out with the Work-Release Program the hours to which he will be committed, and the payment to the Work-Release Program will be $3 a day for room and board."

It appears, however, from the aforementioned, that the trial court failed to distinguish between the prior law of work-release and the present law of periodic imprisonment, for as Mr. Justice Goldberg stated in *People v. Dietschweiler* (1st Dist. 1974), 21 Ill. App. 3d 707, 722, 315 N.E.2d 585:

"The sentence pronounced by the court, consisting of probation for 5 years combined with detention under the Work Release Program for 1 year, was proper when imposed. (Ill. Rev. Stat. 1971, ch. 38, par. 123—7.) However, as has been frequently and properly held, the provisions of the Illinois Unified Code of Corrections are applicable to this sentence. (*People v. Harvey*, 53 Ill.2d 585, 294 N.E.2d 269.) As the Unified Code existed on its effective date of January 1, 1973, the trial court could not require imprisonment as a condition of probation except periodic imprisonment under article 7 of the Code. (Ill. Rev. Stat. 1973, ch. 38, par. 1005—6—3(b).) The former Work Release Program has now been replaced by sentence of periodic imprisonment under the Unified Code. Ill. Rev. Stat. 1973, ch. 38, par. 1005—7—1 to 8."

In our case, the sentence order signed by the trial court is dated July 17, 1975, and reads as follows:

"* * * ordered that the defendant is sentenced to 1 yr days in the House of Correction as a condition of 3 probation."

The sentence order is entitled "Regular Work Release," but it refers to section 5—7—1 in the body of the order. This is the section of the Unified Code of Corrections that applies to periodic imprisonment. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—7—1 *et seq.*) Because of these conflicts, we are vacating the sentence imposed and remanding the cause to the circuit court for resentencing.

Finally, in the "conclusion" to his brief, defendant asks "* * * in the alternative, that the one (1) year sentence under the Illinois Work Release Program be reversed on the grounds that defendant suffers from heart trouble, and that imprisonment of any kind could be fatal, the defendant having suffered heart attacks on April 20, 1973; April 18, 1974; December 7, 1974; March 3, 1976; and March 15, 1976, and was hospitalized twice."

■■ The State replies that the defendant here waived this issue by raising it in the "Conclusion" section of his brief rather than in the "Argument" section of his brief. (Ill. Rev. Stat. 1975, ch. 110A, par. 341(e)(7).) In addition, these five instances are completely dehors the record, and thus cannot be considered by this court in disposition of the cause before us. *People v. Anthony* (1963), 28 Ill. 2d 65, 69-70, 190 N.E.2d 837; *People v. Myers* (5th Dist. 1974), 18 Ill. App. 3d 700, 705, 310 N.E.2d 407.

■■ We do not find that the sentence imposed was greatly at variance with the purpose and spirit of the law or greatly disproportionate to the nature of the offense. (*People v. Givens* (1st Dist. 1977), 46 Ill. App. 3d 1035, 1044-45, 361 N.E.2d 671.) One of the bullets the defendant fired at the victim was still in the victim's body at the time of trial, and the victim was incapacitated from work for a period of 2½ months. The trial court did not abuse its discretion (*People v. Terranova* (1st Dist. 1977), 49 Ill. App. 3d 360, 366, 364 N.E.2d 357) and the sentence was not excessive.

The judgments of conviction are affirmed.

The sentence imposed is vacated and the cause is remanded so that the circuit court may impose a new sentence not inconsistent with the views expressed herein.

DOWNING, P. J., and STAMOS, J., concur.