THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LERMAN JENKINS, Defendant-Appellant.

First District (5th Division)   No. 77-1161

Opinion filed July 21, 1978.

James J. Doherty, Public Defender, of Chicago (Andrew J. Kleczek, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant was convicted of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2) after a bench trial, and he was sentenced to a term of 5 to 10 years. The issue presented for review is whether defendant was denied

his constitutional right to confrontation when the trial court limited cross-examination of complainant with respect to charges pending against him.

At trial the complainant Joseph Garner testified that on October 22, 1973, at about 1 a.m., defendant approached him with a gun and demanded money. Garner testified defendant was wearing pink pants, a pink knit shirt and black shoes. Garner gave defendant $30 and the latter told him to run. Defendant shot once toward his leg, and once toward his head before the gun "snapped" two times. Then Garner started chasing him with a brick in his hand, and defendant ran to a house at 21 North Mayfield, where he was admitted by a young woman.

Garner subsequently went to the door with the police, but they did not have a warrant and were not admitted. Sometime later, two women came out, and he identified one as the person who let defendant into the house. She became verbally abusive toward him, grabbed his shirt and kicked him; she and the other woman were then arrested. At that point, Garner went into the house with the police, and he was there when another policeman brought in defendant, who was wearing pajamas. Garner testified that when he identified him as the robber, an older woman came in, berated defendant and pounded on his chest. He became remorseful and told police where the clothes were located.

Officer Thomas Eichler testified he responded to a radio message of a robbery in progress and upon investigation went with Garner to 21 North Mayfield. A female answered the door and complainant identified her as the one who had let defendant into the house. They stepped inside the vestibule and observed two males and a female in the dining room, and complainant indicated that neither man was the robber. An older woman told the officers that they would have to leave because they did not have a search warrant.

He went to the rear of the house to watch the back door until an assist unit arrived. Subsequently, he observed defendant, clad in oversized pajamas run down the back stairs. Upon bringing him into the house, the complainant identified him as the robber. A woman named Diana Avery then began beating on defendant's chest demanding to know why he caused the trouble. He said he was sorry and directed police to the clothes he had hidden under the mattress. The gun, which had one live round in it, was in the pants pocket.

The testimony of Officer Joseph Kondal at the hearing on the motion to suppress was stipulated to at the trial. Kondal had testified to circumstances corroborating the complaint's identification of defendant and to defendant's leading the officers to where he had hidden the clothes and gun.

Beverly Brady testified for the defense that just prior to 1 a.m. on October 22, 1973, she and her former husband George Taylor were at a

drive-in theater with her sister Jacqueline Brady and Terry Johnson, her sister's fiancee. Her husband was wearing pink pants and a black and white shirt. Upon arriving home she heard some shots and saw a man running down the street. About one-half hour later the police came to the house and the complainant identified Taylor as the robber. However, the police did not place him under arrest until they returned about 25 minutes later. After the arrest, she saw defendant coming across the street, and he was wearing gold and black pants and a gold shirt. She testified that the revolver identified by the complainant belonged to her uncle.

George Taylor testified that he had been to the drive-in theater with his wife Beverly, Jacqueline Brady and a young man named Terry, and they returned home about 1 a.m. After hearing shots fired he went into the house. He stated he was wearing pink pants and when the police arrived, the complainant identified him as the robber. After he was arrested and placed in the squad car, he saw defendant walking across the street wearing gold pants and a gold shirt.

Defendant testified that on the evening of October 21, 1973, he had been at his sister's house until about 12:30 a.m. He then went to a house across the street from 21 North Mayfield where he talked to his friend Terry. At about 1:30 a.m., he saw several police cars across the street. Upon going over to investigate, he saw they had arrested George Taylor. When his cousin Beverly said that her husband had not robbed anyone, the complainant then looked at him and told the police that he was the robber. Defendant denied being inside the house that evening and denied owning the pink pants. He stated he was wearing a gold shirt and gold pants. A policeman made him try on the pants at the police station but they did not fit.

Defendant also explained that Diana Avery was not poking him in the chest. Rather she was telling him to go with the police, and he was telling her that he was not going because he had not done anything.

OPINION

■■ Defendant contends that restricting cross-examination of the complainant was a denial of his constitutional right to confrontation because it prevented him from showing the complainant's bias. When the complainant was cross-examined at trial, the following colloquy took place:

"MR. BELL: Where do you now reside?
THE WITNESS: I live at 5119 West Washington.
Q. At the present time?
A. Yes.
Q. Are you in custody?
A. Yes.

MR. WILCOX: Objection, Judge. Counsel knows that is not right, Judge.

THE COURT: It really doesn't bear any relevance. Sustained.

MR. BELL: What?

THE COURT: Sustain the objection.

MR. BELL: Have you ever been arrested?

THE WITNESS: Yes.

MR. WILCOX: Objection.

THE COURT: Sustained.

MR. BELL: Your Honor is not allowing me to impeach this witness?

THE COURT: You may by appropriate means, using the Montgomery rule.

MR. BELL: What?

THE COURT: Using the Montgomery rule.

MR. BELL: Do you know who you talked to prior to this case, prior to your getting on the stand?

MR. WILCOX: Objection. There is no foundation. When? Prior to getting on the stand could of course mean from the time of the initial arrest up until today.

THE COURT: He may answer. You may answer. Did you talk to anyone prior to taking the stand today about this case?

THE WITNESS: Did I talk to anyone?

THE COURT: Right.

THE WITNESS: Well, the only thing I kn[o]w [is that] I went to Court on the date they told me to come down here, that's all.

MR. BELL: I beg your pardon? I didn't hear what you said.

A. The only thing I kn[o]w [is] that I had a Court date.

Q. You talked to nobody about this case, is that right?

A. About this case, yes.

Q. Who?

A. Well, the Public Defender.

Q. Have you ever been convicted of a crime?

MR. WILCOX: Objection.

THE COURT: You may answer.

THE WITNESS: Yes.

Mr. WILCOX: A crime? Any crime?

THE COURT: He may answer.

MR. BELL: What crime were you convicted of?

A. Well for a stolen auto, probation.

Q. Are you on probation now?

A. No, sir.

In *People v. Mason* (1963), 28 Ill. 2d 396, 400, 192 N.E.2d 835, 837, the court set forth the relevant rule as follows:

"A distinction must be made between proof of conviction of an infamous crime for the purpose of impeaching credibility of a witness and the use of arrest or indictment as evidence of bias or interest on the part of the witness.

\* \* \*

[T]he fact that a witness has been arrested or charged with a crime may be shown or inquired unto where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. Anno. 20 A.L.R. 2d 1421, 1440."

Also see *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, and *People v. Curtis* (1977), 48 Ill. App. 3d 375, 385, 362 N.E.2d 1319, 1326.

■■ Although wide latitude is generally afforded in cross-examination as to the possible bias of a witness, in the instant case, the trial court apparently believed that defense counsel was impeaching the witness with respect to credibility rather than bias. This belief is evidenced by the court's reference to the "Montgomery rule" (*People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695), which is our supreme court's pronunciation concerning the impeachment of a witness by his past convictions. Defense counsel did not bring this misapprehension to the court's attention. Nor did he make an offer of proof or an attempt to hold a sidebar. Given these omissions by defense counsel, we do not perceive any error on the part of the trial judge.

■■ Furthermore, even if any error was present, we believe application of the waiver doctrine is appropriate here. In *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856, our supreme court held that the waiver doctrine applies to constitutional issues, and the only exceptions to the doctrine are cases of plain error involving substantial defects under Supreme Court Rule 615(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 615(a)) and criminal cases where the evidence is closely balanced. Other courts have also held that the post-trial motion is not necessary to preserve error in a bench trial, when the error has been brought to the attention of the trial court by motion or by timely objection, thus giving the trial court the opportunity to correct the error involved. *People v. Terranova* (1977), 49 Ill. App. 3d 360, 364 N.E.2d 357; *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.

Again, given the fact that counsel did not bring the misunderstanding to the court's attention, the trial judge was not afforded an opportunity to correct any error that may have been made and counsel further did not preserve any error due to his failure to include it in his post-trial motion.

In addition, the evidence is not closely balanced and the court's failure to allow a full measure of cross-examination as to the complainant's bias must not be deemed to be prejudicial. In this regard we note the case of *People v. Whitlow* (1977), 48 Ill. App. 3d 425, 363 N.E.2d 102, which is similar to the one at bar. There the appellate court found that, although defense counsel should have been allowed to show the possibility that the prosecution witness was biased because he expected leniency, the evidence against defendant was overwhelming and did not constitute prejudicial error.

Here, the complainant identified defendant right after the robbery at a time when he was not in custody and apparently was not subject to any alleged coercion by the State. Therefore, the issue of bias either does not arise or is greatly diminished. Furthermore, defendant's conviction does not rest solely upon the testimony of the victim. Upon being berated by Diana Avery, the testimony of the police officers indicated that defendant led them to where he had hidden the pink outfit and the gun. This corroborated the complainant's testimony and rendered any claim of improper limitation on cross-examination to be without merit.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and LORENZ, J., concur.