THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY CRAWFORD *et al.*, Defendants-Appellants.

First District (4th Division)    No. 80-92

Opinion filed February 19, 1981.—Rehearing denied March 19, 1981.

ROMITI, P. J., dissenting.

Ralph Ruebner and Richard E. Cunningham, both of State Appellate Defender's Office, of Chicago, for appellants.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr and Adrienne Noble Nacev, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Larry Crawford and Demettris Byrd, were charged with the offenses of murder (Ill. Rev. Stat. 1977, ch. 38, par. 9—1(a)(2)(3)), aggravated battery (Ill. Rev. Stat. 1977, ch. 38, par. 12—4(a)(b)(1)), and armed robbery (Ill. Rev. Stat. 1977, ch. 38, par. 18—2). Following a bench trial, they were found guilty on all charges. Defendant Crawford was sentenced to 30 years' imprisonment, and defendant Byrd was sentenced to 25 years.

Defendants appeal from the judgments and sentences. The issues presented for review are (1) whether the trial court's refusal to allow defendants to cross-examine Edward Garlington concerning his murder charge, which arose from the killing of an eyewitness to the events on trial, deprived them of a fair trial and (2) whether the death of Reginald Garlington and defendants' guilt were proved beyond a reasonable doubt. We affirm.

On January 19, 1979, around 10 p.m., police officer Edward Beale received a radio call to proceed to Farmer's Pool Hall at 1208 West 69th Street, Chicago, where two men had been shot. At the pool hall, the officer was led to the basement area where he saw a man lying on the floor. He checked for signs of life but there were none. Officer Beale identified photographs of Reginald Garlington as the person who was found on the floor bleeding from the chest area.

Officer Angelo Pesavento testified that on January 19, 1979, he re-

ceived a call around 10:20 that evening regarding a shooting at 6900 South Throop, Chicago. He entered an apartment building and found a blood-stained stairwell. He trailed the bloodstains out to the sidewalk, which led him to 6809 South Throop where other officers were holding Larry Crawford, later identified as codefendant. Crawford was bleeding from his foot, which was cut on broken glass during a chase. He was taken to Holy Cross Hospital for treatment.

Officer Bernard L. Zartler testified that on January 20, 1979, at approximately 12:30 a.m., he and his partner's assignment was to question a man at Roseland Hospital who was allegedly shot at 124th and Parnell. At the hospital, they talked to Rudolph Byrd. They went to the emergency room where Demettris Byrd, later identified as codefendant, was observed wounded in his cheek. After conversing with Investigator Rochowicz at central communications of the Chicago Police Department, Officer Zartler arrested Rudolph and Demettris Byrd.

Marvin Koonce testified that around 8 or 8:30 p.m. on January 19, he was at Farmer's Pool Hall attending a party for Bennie Webb. A dice game was in progress downstairs. At approximately 10 p.m., both defendants, carrying guns, entered the basement and ordered everyone to put his hands and money on the table. After searching everyone for weapons, defendants ordered some people to stand against the wall, and others were told to stand on one side of the dice table. Reginald Garlington stood by the table and Renel Hentley remained seated. Koonce, standing against the wall, could not see behind him, but he heard Reginald say, "Wait a minute; what's happening; can't we talk?" Demettris Byrd said, "Come on, don't make me kill you." Then the shooting started and Koonce ducked under a heater. When the shooting stopped, Reginald Garlington was lying on the floor. Koonce viewed two photographs and identified them as Reginald Garlington, the man whom he saw lying on the floor.

Kenneth Patton arrived at Farmer's Pool Hall around 5 or 6 p.m. on January 19. He testified that he went to the basement at 10 p.m. because he thought a surprise party was being given for Mr. Farmer by Bennie Webb. Defendants were present and had been gambling. Both defendants left the pool hall and returned. Defendant Byrd argued with someone about his losing money in the dice game. The defendants left again. The second time they returned, defendants pulled out hand guns and ordered everyone to put his hands and money on the table. Defendant Crawford and Reginald Garlington exchanged words. Crawford pointed a gun at Reginald's head. Everyone was searched for weapons. Reginald backed away, seeing that both guns were pointed at him. The witness stated he heard running, then shooting, and saw Crawford shooting toward Reginald. After the shooting was over, Reginald, who was standing, said, "I'm

hit, I'm hit," and then he fell to the floor. Patton, who was also shot, stated he did not realize he was wounded until someone noticed blood dripping from the back of his shirt.

Edward Garlington asserted his fifth amendment privilege against self-incrimination regarding the events on the night in question and the related murder of Renel Hentley on January 20. The trial judge ordered Edward to testify to the events of January 19, over the objection of his attorney, and informed the witness that he, the judge, would determine the parameters of Edward's privilege throughout the questioning. Further, the trial court maintained that Edward was testifying under duress and his testimony was being given under judicial order. Edward testified that Reginald was his brother and that the last time he saw Reginald alive was at Farmer's Pool Hall on January 19, 1979, begging for his life, before being shot by defendants. Edward stated he was standing against the wall with his head turned as he watched the shooting. He did not see Demettris Byrd wounded by gunfire. He further testified that he was not carrying a weapon that evening and that defendants and Leonard Byrd were the only ones in possession of guns at the time of the shooting.

Bennie Webb, a defense witness, substantiated testimony as to the events that took place in the pool hall on the evening in question. He testified that as Reginald began moving toward the door, Crawford ordered him to move back. The witness heard shots and started to run toward the door. He noticed blood on the face of Demettris Byrd.

Defendant Crawford testified that he was at Farmer's Pool Hall the evening of January 19 and went downstairs around 9 p.m. At approximately 9:45 p.m., codefendant Byrd came downstairs and began arguing with Reginald. Renel Hentley moved between Byrd and Reginald in order to stop the argument. Byrd informed him that Reginald and his friends were armed and were planning to harm them. According to the witness, he pulled his pistol and instructed everyone to put his hands on the table. He and Byrd searched everyone for weapons. Reginald moved away from the table, saying this was unnecessary; then Reginald ducked behind Bennie Webb and came up firing toward Byrd. Edward Garlington fired in the direction of the witness who fired back at Edward. Crawford stated he then fell to the floor until the shooting ceased.

Demettris Byrd, testifying in his own behalf, stated that the mother of his son was living with Reginald Garlington and the argument concerned his son. He corroborated his codefendant's testimony regarding the shooting. He stated that Reginald Garlington shot him in the face and he did not shoot his weapon at all.

■■ Defendants contend they were denied their right of confrontation and their right to present a defense by the trial court's refusal to allow cross-examination of Edward Garlington concerning the killing of an eyewit-

ness to the events on trial. Edward was charged with the murder of Renel Hentley, eyewitness to the murder of Reginald Garlington. The trial court is vested with substantial discretion to determine both the manner and scope of cross-examination. The trial court's decision on such issues will not be overturned absent a showing of a clear abuse of that discretion resulting in manifest prejudice. *People v. Jodie* (1979), 79 Ill. App. 3d 348, 353, 398 N.E.2d 595, 599.

The fact that a witness has been charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. (*People v. Jenkins* (1978), 62 Ill. App. 3d 1023, 1027, 379 N.E.2d 1303, 1306.) Although wide latitude is generally afforded in cross-examination as to the possible bias of a witness, in this case, the trial court apparently believed defense counsel was improperly questioning the witness, *i.e.*, defense counsel was attempting to prove Edward Garlington, the witness, killed Hentley in retaliation for the murder of his brother, Reginald. The trial court found this line of inquiry irrelevant. Furthermore, the issue in this case is the defendants' guilt of murder, aggravated battery, and armed robbery. Questioning relating to the killing of Renel Hentley is immaterial on this issue.

■■ Given this situation, the decision of the trial judge was proper in limiting the latitude of the cross-examination of the witness. There was no prejudice to defendants in the court's ruling.

Defendants' other assignment of error is that their convictions must be reversed because the State failed to prove beyond a reasonable doubt that (a) Reginald Garlington died and (b) if he died, his death was caused by criminal acts of defendants.

■■■ It is essential that the prosecution establish the *corpus delicti*. The elements to be proved in the case of a criminal homicide are proof of death and proof of a criminal agency causing death. Proof of the *corpus delicti* may be by circumstantial evidence. (*People v. Gendron* (1968), 41 Ill. 2d 351, 360, 243 N.E.2d 208, 214.) We understand the rule to be that the *corpus delicti* must be proved by competent evidence beyond a reasonable doubt. While prudent practice suggests that the State should produce medical testimony as to the cause of death where such testimony is readily available, the failure to do so is not in itself grounds for reversal where the cause of death has been established beyond reasonable doubt by other competent evidence. *People v. Jones* (1961), 22 Ill. 2d 592, 596, 177 N.E.2d 112, 114.

In our opinion, there is unquestionably competent evidence in the record to prove beyond a reasonable doubt that Reginald Garlington died as a result of gunshot wounds and that his death was caused by criminal acts. The evidence in the record shows that defendants took all weapons

from persons present at the pool hall; that shots were fired by defendants, hitting Kenneth Patton and Reginald Garlington; and that Officer Beale found Reginald Garlington bleeding from the chest area. Beale went over to the body to check for signs of life but he found none. Edward Garlington, the victim's brother, testified that his brother begged for his life before being shot.

■■ We continue to hold that a conviction may be sustained upon circumstantial evidence as well as direct evidence, it being necessary only that the proof of circumstances must be of a conclusive nature and tendency leading to a satisfactory conclusion and producing a reasonable certainty that the accused and no one else committed the crime. Proof of guilt beyond a reasonable doubt does not require proof beyond any possibility of a doubt. (*People v. Jackson* (1979), 79 Ill. App. 3d 698, 703-04, 398 N.E.2d 959, 964.) Under the circumstances in this case, we hold that both elements of the *corpus delicti* were established by competent evidence beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, J., concurs.

Mr. PRESIDING JUSTICE ROMITI, dissenting:

Because it is clear to me that the cross-examination of Edward Garlington could not have been properly restricted on the ground of immateriality, and because the record does not clearly establish that the trial court limited that cross-examination in an effort to protect Edward Garlington's fifth amendment rights, I believe this cause should be reversed and remanded for a new trial and therefore must respectfully dissent.

The State's version of this incident, as presented by its witnesses, was that the defendants, having lost money in a dice game, sought to rob the other players at gunpoint and then shot the deceased in cold blood. On the other hand the defendants testified that after an altercation between the deceased and defendant Byrd was broken up by Sterling Hentley, Hentley warned Byrd that the people in the basement all had guns and were not going to allow them to leave. Defendants then decided that they would disarm those in the room at gunpoint and make their escape. They contended that while they were attempting to do this Reginald Garlington, Edward Garlington, and a third man began to fire at them. Byrd was hit in the face by one bullet and did not fire back. Crawford admitted firing shots in return, but only at Edward Garlington. What defendants were prevented from doing at trial was to attempt to adduce from

Edward Garlington an admission that the following day, after stating that Hentley had "set up" his brother, he shot and killed Hentley. Clearly this in itself might have tended to corroborate defendants' version of the shooting, which was predicated on a warning by Hentley. Yet at trial the only reason cited by the trial judge for excluding this evidence, after hearing defendants' offer of proof, was that it was immaterial and irrelevant and could not possibly be beneficial to the defense. It is evident that this case turned on the trial court's determination of credibility. Under those circumstances the exclusion of this evidence solely on the ground of materiality and relevancy was improper and was clearly prejudicial.

The State suggests that in excluding this evidence the trial judge was acting to protect Edward Garlington's fifth amendment right not to incriminate himself. The State further suggests that the trial judge balanced the need to protect this right against the importance of the evidence sought to be adduced. Unfortunately on this record that is only speculation. The trial court clearly had, in effect, granted Edward immunity from prosecution for his testimony concerning the events of the 19th. This was done by ordering him to testify over his fifth amendment claims and obtaining from the State a pledge not to use any of this coerced testimony. But the question of whether this procedure should or could be used with respect to testimony about the shooting on the 20th was never addressed on the record. Defendants were never given an opportunity to seek to convince the judge that the interests of the defendants in a fair trial would necessitate extending this same form of immunity to that anticipated testimony. To now justify the trial court's decision on the basis of a fifth amendment analysis never explicitly advanced at trial with respect to this aspect of Edward Garlington's testimony would be to deny defendants a fair trial. Accordingly I would reverse defendants' convictions and remand for a new trial at which these issues could be fairly addressed by all parties.